E-FILED
Monday, 11 May, 2020  09:10:07 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LARRY PIPPION, AS REPRESENTATIVE OF THE ESTATE OF LARRY EARVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Law No. 19-cv-03010-SEM-TSH |
| | ) | |
| SGT. WILLIE HEDDEN, LT. BENJAMIN BURNETT, LT. BLAKE HAUBRICH, OFFICER ALEX BANTA, WARDEN CAMERON WATSON, ASSISTANT WARDEN STEVE SNYDER, LT. TODD SHEFFLER, OFFICER SYRCLE, OFFICER SNELL, OFFICER HENDRICKS, SGT. HASTEN, SGT. VOLK, OFFICER WERRIES, OFFICER KURFMAN, OFFICER SHAW, OFFICER RICHMILLER, OFFICER WATERSTRAAT, OFFICER ARENS, MAJOR FISHEL, MAJOR CRARY, LT. SHOOPMAN, LT. SORRELLS, LT. MCQUILLEN, SGT. LENNING, SGT. THOMAS, OFFICER LOOKER, OFFICER POOL, OFFICER GRAWE, OFFICER CHENOWETH, OFFICER RADECKI, OFFICER HUGES, LT. LINDSEY, NURSE DUESENBERG, NURSE PRACTITIONER SMITH, LCPC HILL, AWP CONLEY, OFFICER SESSION, LT. DURELL, SGT. EICHELBERGER, OFFICER SHIPMAN, AND OFFICER WHOLFIEL, INDIVIDUALLY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **DEFENDANT DEMANDS TRIAL BY JURY** |
| | ) | |
| Defendants. | ) | |

<u>**ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

NOW COMES Defendant WILLIE HEDDEN, by THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., his attorneys, and for his response to Plaintiff's First Amended Complaint, states as follows:

## PARTIES

1.      Larry Earvin, the decedent, was a 65-year-old prisoner housed at Western Illinois Correctional Center. He died on June 26, 2018 as a result of a violent physical attack upon him by some of the Defendants that occurred on or about May 17, 2018.

**RESPONSE:   Defendant admits that Larry Earvin was a prisoner housed at the Western Illinois Correctional Center.  Defendant admits that Larry Earvin died on June 26, 2018.  On counsel's advice, I invoke my right under the Fifth Amendment not to answer the remaining allegation on the grounds that I may incriminate myself.**

2.      At the time of the incident, Mr. Earvin was incarcerated at Western Illinois Correctional Center in Mount Sterling, Illinois. He was imprisoned in 2015 for robbery/theft, and he was scheduled to be released from custody in September 2018.

**RESPONSE:   Defendant admits that Mr. Earvin was incarcerated at the Western Illinois Correctional Center in Mount Sterling, Illinois.  Defendant denies the remaining allegations of paragraph 2.**

3.      Plaintiff, Larry Pippion, is the son of the decedent and has been appointed Representative of Mr. Earvin's estate.

**RESPONSE:   Defendant admits the allegations of paragraph 2 based upon the affirmation and filings of the Plaintiff in state court.  Defendant denies personal knowledge of this information.**

4.      At all relevant times, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth,

Radecki, Huges, Lindsey, Session, Durell, Eichelberger, Shipman, and Wohlfiel were law enforcement officers employed by the IDOC as correctional staff at the Western Illinois Correctional Center where Mr. Earvin was incarcerated. At all relevant times, these Defendant Officers were acting within the scope of their employment and under color of law. They are sued in their individual capacities.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

5.      At all relevant times, Defendant Cameron Watson was the Warden at the Western Illinois Correctional Center and an employee of the IDOC. Defendant Watson was responsible for the implementation, oversight, and supervision of policies and practices at Western Illinois, and the oversight and discipline of staff there. At all relevant times, Defendant Watson was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

**RESPONSE:    Defendant admits that Cameron Watson was the Warden at the Western Illinois Correctional Center at certain times relevant to this cause of action. Defendant admits that Mr. Watson was an employee of the Illinois Department of Corrections at the time he served as Warden.   Defendant has insufficient knowledge or information to either admit or deny the allegations regarding Mr. Warden's specific job duties and responsibilities.**

6.      On information and belief, at all relevant times, Defendant Steve Snyder was the Assistant Warden of Operations at Western Illinois and an employee of the IDOC. Defendant Snyder was responsible for the implementation, oversight, and supervision of policies and

practices at Western Illinois, and the oversight and discipline of staff there. At all relevant times, Defendant Snyder was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

**RESPONSE:   Defendant admits that Steve Snyder was the Assistant Warden of Operations at Western Illinois Correctional Center and an employee of the Illinois Department of Corrections at certain times relevant to this cause of action.   Defendant denies personal knowledge or information regarding Mr. Snyder's responsibilities and duties at the Western Illinois Correctional Center.**

7.      At all relevant times, Defendants Duesenberg, Whitaker, Smith, Hill, and Conley (hereinafter "Medical Staff Defendants") worked at Western Illinois Correctional Center as part of the medical staff. At all relevant times, the Medical Staff Defendants were acting under color of law and within the scope of their employment. They are sued in their individual capacities.

**RESPONSE:   Defendant denies personal knowledge of the employment status of the above named persons.   Defendant denies personal knowledge as to their specific duties and capacities at all times relevant to this lawsuit.**

<u>**JURISDICTION AND VENUE**</u>

8.      This case includes claims for relief under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1331 and 1367.

**RESPONSE:   Defendant does not dispute that jurisdiction and venue are proper as to the federal claims. Defendant denies that this Court has jurisdiction over the Wrongful Death claim.**

9.      Venue is proper under 28 U.S.C. § 1391(b).

**RESPONSE:    Defendant does not dispute that venue is proper as alleged.**

## FACTUAL ALLEGATIONS

10.    On or about May 17, 2018, at or about 1:10 p.m., Defendant Syrcle verbally engaged with Mr. Earvin. This encounter caused Defendant Syrcle to call for Defendant Burnett.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

11.    At or about 1:20 p.m., Defendant Burnett entered the wing where Mr. Earvin and Defendant Syrcle were.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

12.    At or about 1:23 p.m., Defendants Snell, Burnett, and Syrcle engaged in a physical altercation with Mr. Earvin.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

13.    During the foregoing altercation, without just cause or provocation, Defendant Burnett pepper sprayed Mr. Earvin.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

14.    Lt. Burnett then called a Code 1 (Staff in Distress), to which various Defendants, including without limitation Defendants Hedden, Hendricks, Banta, and Sheffler, responded.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

15.     Defendants Burnett, Snell, and Syrcle handcuffed Mr. Earvin behind his back.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

16.     At or about 1:25 p.m., Mr. Earvin was then dragged to segregation by various Defendant Officers, including without limitation Defendants Hedden, Hendricks, Banta, and Sheffler.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

17.     Once in the segregation area at or about 1:30 p.m. and with knowledge that this was an area where there were no video cameras to capture what would occur, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges either beat and viciously attacked Mr. Earvin while he was on the ground and handcuffed behind his back or observed this and failed to intervene despite having a reasonable opportunity to do so. The beating administered to Mr. Earvin includes without limitation the Defendants punching and kicking Mr. Earvin in his ribs repeatedly and striking him about the head.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

18.     Witness statements indicate that up to 30-40 officers were involved and/or present as Mr. Earvin was beaten to the point that he would eventually succumb to his injuries and die weeks later.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

19.     As the beating was occurring, none of the Defendant Officers intervened in their fellow officers' use of force despite having a reasonable opportunity to do so.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

20.     At or about 1:45 p.m., Defendant Nurse Duesenberg arrived at Mr. Earvin's cell and performed a medical assessment. Despite the obvious severity and nature of Mr. Earvin's extensive injuries which would have been immediately visible to her, Defendant Duesenberg failed to provide Mr. Earvin with adequate medical attention or procure him the necessary emergency medical attention, instead simply cleaning various abrasions, bandaging his bleeding head, and performing a vitals check. She noted only that his nose was running (presumably from the OC spray), he had cuts on his forehead, and that he had abrasions to his left shoulder, left knee, and left toe.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

21.     Defendant Duesenberg was aware from her assessment that Mr. Earvin had been seriously injured, including without limitation that he had sustained injuries that affected his ability to properly breathe.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

22.     Defendant Duesenberg falsified medical reports to indicate that Mr. Earvin had only minor injuries and did not complain of any pain other than his head/face area. Her report of her initial assessment indicates that Mr. Earvin was in "minimal distress" despite "facial grimacing and audible grunting present" and that he was "coached to breath[e] in through nose and out through mouth."

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

23.     Duesenberg's report indicates that the plan for treatment was to place Mr. Earvin on continuous watch, administer ibuprofen for pain, re-evaluation in the afternoon by the nurse on shift, and a "follow-up at final destination due to being transferred out tomorrow 5/18/18 per security."

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

24.     Recognizing the severity of Mr. Earvin's injuries and not wanting to be subject to investigation or repercussions, as Mr. Earvin was slowly dying from his injuries, the Defendants had devised a plan to transfer Mr. Earvin in the morning to another facility.

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

25.     Defendant Lt. Lindsey was present for Duesenberg's initial medical assessment of Mr. Earvin and observed Mr. Earvin's extensive and obvious severe medical injuries, but did nothing to procure him the immediate emergency medical attention he required.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

26.      At or about 1:50 p.m., Defendant Watson and Deputy Director Eilers were notified of the altercation between staff and Mr. Earvin.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

27.      While Mr. Earvin lay in a cell suffering from the injuries that would shortly thereafter claim his life, medical staff treated the Defendants who viciously attacked him for the various scratches they had received while beating him and administered tetanus shots to some of the officer Defendants because they had been exposed to Mr. Earvin's blood while they beat him to death.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

28.      At or about 2:15 p.m., Defendant Session had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing other than photograph them.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

29.      At or about 2:30 p.m., Defendant Conley placed Mr. Earvin under a crisis care watch due to "unusual behavior that [was] concerning and need for further observation." Despite observing Mr. Earvin's extensive and obvious serious medical injuries, Defendant Conley did nothing to obtain Mr. Earvin the immediate emergency medical attention he required.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

30. At or about 3:00 p.m., Defendants Hubbard and Eichelberger moved Mr. Earvin from his segregation cage to cell Receiving 38 so he could be placed on "continuous watch" (where there was to be both verbal and visual line of sight monitoring continuously) at which time Mr. Earvin vomited on the Defendants and the floor. Despite observing Mr. Earvin's extensive and obvious serious medical injuries, these Defendants did nothing to obtain Mr. Earvin the necessary medical attention, instead simply going to complete workman's compensation packets in the event something adverse happened to them from their contact with Mr. Earvin's vomit.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

31. Defendant Hill initiated the continuous watch for Mr. Earvin.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

32. It was clear to Defendant Hill that Mr. Earvin's condition was critical and that he required immediate emergency medical attention. Rather than procuring him the necessary immediate emergency medical attention, she falsely noted in her medical paperwork as part of a conspiracy to possibly cover up Mr. Earvin's imminent death that there had been reports that Mr. Earvin was at risk for suicide and that he was acting strangely. She indicated that he was unable to answer questions and characterized his loss of consciousness as "falling asleep."

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

33.     Defendants Duesenberg and Smith were made aware that Mr. Earvin was vomiting. At this point, having no choice but to expand the universe of individuals who would become aware of this incident, Smith discussed Mr. Earvin's condition with one of the doctors on call via telephone.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

34.     Smith did not fully apprise the doctor on the phone of the reality of Mr. Earvin's condition, instead limiting the information provided to the fact that he was vomiting and minimizing the nature of his injuries. Due to this misinformation, the recommendation obtained was to transfer Mr. Earvin to the Health Care Unit's infirmary and conduct neurological checks.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

35.     Had Smith told the truth regarding Mr. Earvin's obvious critical condition, the recommendation would have been to get him immediate emergency medical attention.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

36.     Despite being ordered to conduct neurological checks, none of the medical staff Defendants involved who were responsible for Mr. Earvin's care and his physical well-being appropriately did so. They prepared a form titled "Flow Sheet" in which they put together a neurological checklist of vitals to be taken and observations regarding Mr. Earvin's mental state,

pupils muscle tone, and movements to be logged. The Defendants failed to log anything on the Flow Sheet because they recognized that Mr. Earvin's condition was grave and they did not want to leave a paper trail regarding their recognition of such and their abysmal failure to abide by their oaths when they ignored his condition and refused to obtain him the necessary medical care.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

37.     At or about 3:15 p.m. and then again approximately half an hour later, Defendant Durell had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

38.     Between about 3:00 p.m. when he was placed in Receiving 38 and the time he departed the facility via ambulance, Defendants Hill, Eichelberger, Shipman, and Wohlfiel had contact with Mr. Earvin in which as part of the continuous watch on which he had been placed, they observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

39.     At or about 3:59 p.m., Defendant Watson came to Receiving 38 and had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

40.     The gravity of the situation and the critical nature of Mr. Earvin's condition was obvious to those who had observed him.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

41.     At or about 4:15 p.m., Defendants Durell, Eichelberger, and Duesenberg pushed Earvin in a wheelchair to the Health Care Unit and placed him in an isolation cell. During this transfer, he vomited again, and his head was bleeding. Despite observing his extensive and obvious serious medical injuries, none of these Defendants procured him the necessary emergency medical attention.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

42.     After the transfer to the Health Care Unit, Duesenberg telephoned the doctor and informed him that there was a change in Mr. Earvin's vitals – his oxygen levels were lower and he was having difficulty breathing. The doctor advised that Mr. Earvin should be sent to an outside hospital, and finally, over three hours after the vicious, violent attack by the Defendant Officers in which Mr. Earvin was beaten to the point where his injuries were visibly apparent and obviously severe to all who observed him in this time period, an ambulance was called.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

43.     At or about 4:40 p.m., an ambulance was finally on the grounds. Emergency medical staff transported Mr. Earvin to Culbertson Memorial Hospital via ambulance.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

44.     Reports by the Defendant Officers involved, including without limitation Defendants Hedden and Banta, falsely indicate that Mr. Earvin was turned over to staff in segregation "without further incident."

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

45.     Once Mr. Earvin arrived at Culbertson at approximately 5:37 p.m., medical staff there immediately recognized they were ill-equipped to handle Mr. Earvin's grave condition and he was airlifted via helicopter to St. John's Hospital in Springfield, Illinois. Prior to being airlifted, he was intubated.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

46.     Mr. Earvin was received at St. John's at approximately 8:20 p.m. Once there, he was diagnosed with approximately 15 rib fractures, multiple abrasions, lacerations, and hemorrhages, and severe neurological and internal injuries. By the morning of May 18, he was intubated and on full ventilator support with no neurological response or corneal reflex. He was diagnosed with a large left frontal hematoma to his head. He had undergone surgery due to low

blood pressure and bleeding out. He was diagnosed with an intercostal artery bleed and a mesenteric bleed secondary to assault. He had surgery to remove a portion of his bowel, leading to an ileostomy bag being placed for waste removal. His blood loss was severe and he required rapid blood transfusion during his surgical procedures. In short, his condition was critical from the beating he had sustained less than 24 hours earlier, and he was at death's door.

**RESPONSE:  On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

47.     In addition to the foregoing, as a result of the chest trauma he sustained from the altercation, Mr. Earvin had pneumonia, a tracheostomy tube, and a chest tube to drain fluids.

**RESPONSE:  On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

48.     As a direct result of Defendants' misconduct, Mr. Earvin experienced unnecessary pain and suffering. He succumbed to his injuries and died on June 26, 2018.

**RESPONSE:  Defendant admits that Mr. Earvin died on June 26, 2018.   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

49.     Following his death, the pathologist who conducted Mr. Earvin's autopsy concluded that Mr. Earvin died of blunt trauma to the chest and abdomen. His manner of death was ruled a homicide.

**RESPONSE:  On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

50.     As a direct result of Defendants' misconduct, Plaintiff Pippion suffered injury, including without limitation extreme pain and suffering caused by the untimely death of his father, Mr. Earvin.

**RESPONSE:     Defendant denies the allegations of paragraph 50.**

51.     The attack on Mr. Earvin was not an isolated incident at Western Illinois as unjustified violence against prisoners at the facility is a common occurrence.

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

52.     It was common knowledge amongst medical staff, correctional staff, and supervisory personnel that correctional officers were routinely taking inmates to holding cells in segregation and beating them in these locations due to the absence of cameras.

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

53.     Despite this widespread culture of violence, Defendants Watson and Snyder failed to take any meaningful action to prevent prisoners like Mr. Earvin from being harmed by officers charged with protecting them.

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

54.     IDOC policy requires officers who use force to write reports documenting the circumstances surrounding that use of force. On information and belief, Defendants Watson and Snyder reviewed these reports as well as grievances that may have been written complaining about prior instances of excessive force.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

55. Despite their awareness of the issue, Defendants Watson and Snyder failed to provide adequate supervision, discipline or training, or take any action to prevent repeated instances of excessive force by their co-Defendants.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

<u>COUNT I – 42 U.S.C. §1983 – Excessive Force Constituting Cruel and Unusual Punishment</u>
**(Eighth Amendment Claim Against Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges)**

56. All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE: Defendant reasserts his responses to paragraphs 1-55 as and for his response to paragraph 56.**

57. As set forth above, the Defendant Officers intentionally used force against Mr. Earvin, causing his death. Their use of force was unreasonable in light of the facts and circumstances present at the time that the force was used.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

58. In using force against Mr. Earvin, the Defendant Officers intentionally used excessive cruelty toward him for the very purpose of causing harm, and not in a good faith effort to maintain or restore security or discipline.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

59. In the alternative, the Defendant Officers knew that using force presented a risk of harm to Mr. Earvin, but recklessly disregarded that risk and Mr. Earvin's safety by failing to take reasonable measures to minimize that risk of harm.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

60. As a result of the unjustified and unconstitutional conduct of these Defendants, Mr. Earvin sustained damages including pain, suffering, emotional distress, injury, and death.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit. Defendant denies that Plaintiff is entitled to the relief requested.

## AFFIRMATIVE DEFENSES TO COUNT I

NOW COMES Defendant WILLIE HEDDEN, by THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., his attorneys, and for his affirmative defenses to Count I of Plaintiff's First Amended Complaint states as follows:

1. Defendant is entitled to qualified immunity to the extent the claim against him is based upon his effort to follow IDOC policies with respect to his actions taken or not taken with respect to Mr. Earvin at any time during their encounters.

## COUNT II – 42 U.S.C. §1983 – Failure to Intervene
**(Eighth Amendment Claim Against Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Watson, and Snyder)**

61. All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE: Defendant reasserts his responses to paragraphs 1-60 as and for his response to paragraph 61.**

62. As set forth above, all of the Defendants had a reasonable opportunity to prevent the violation of Mr. Earvin's constitutional rights, but they failed to do so.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

63. Defendants knew and were aware of a substantial risk of harm to Mr. Earvin's safety, but consciously disregarded that risk by failing to take reasonable steps to prevent the harm from occurring.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

64. Defendants' failures to act were intentional, done with malice, and/or done with deliberate indifference to Mr. Earvin's rights.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

65. Due to the Defendants' unconstitutional failure to intervene, Mr. Earvin sustained damages including pain, suffering, emotional distress, injury, and death.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit.  Defendant denies that Plaintiff is entitled to the relief requested.

<u>**AFFIRMATIVE DEFENSES TO COUNT II**</u>

NOW COMES Defendant WILLIE HEDDEN, by THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., his attorneys, and for his affirmative defenses to Count II of Plaintiff's First Amended Complaint states as follows:

1.      Defendant is entitled to qualified immunity to the extent he followed IDOC policies with respect to his actions taken or not taken with respect to Mr. Earvin at any time during their encounters.

<u>**COUNT III – 42 U.S.C. §1983 – Failure to Protect**</u>
<u>**(Eighth Amendment Claim Against Watson and Snyder)**</u>

66.      All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE:   Defendant reasserts his responses to paragraphs 1-65 as and for his response to paragraph 66.**

67.      Mr. Earvin's injuries were proximately caused by the policies and practices of Defendants Watson and Snyder.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

68.     At all relevant times, the Defendants had an affirmative duty to take reasonable steps to ensure Mr. Earvin's well-being and safety given that Mr. Earvin was in government custody.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

69.     Defendants knew that Mr. Earvin and other inmates faced a substantial risk of serious harm from officers in their employ, including the Defendant officers involved in brutally beating Mr. Earvin to death, and failed to take reasonable measures to abate said risk.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

70.     On information and belief, prior to May 2018, Defendants Watson and Snyder knew that correctional staff at Western Illinois, including without limitation Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges were routinely using excessive force against prisoners housed there. This routine use of excessive force was widespread and pervasive. Despite knowledge of this unconstitutional use of force, Defendants Watson and Snyder failed to adequately supervise, discipline, or train correctional staff, or take any other reasonable measures to prevent officers like Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges from using excessive force against Mr. Earvin.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

71.     At all times relevant to their involvement in this case, Defendants Watson and Snyder were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding use of force at Western Illinois; the training of correctional staff at Western Illinois on use of force; and the supervision and discipline of correctional staff at Western Illinois.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

72.     The widespread use of excessive force at Western Illinois as described above, so pervasive as to constitute a *de facto* policy or practice, was able to exist and flourish because Defendants Watson and Snyder were deliberately indifferent to the problem, thereby ratifying it.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

73.     Mr. Earvin's injuries were caused by employees of IDOC, including without limitation Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges, who acted pursuant to the *de facto* policies described above at Western Illinois, which were ratified by Watson and Snyder.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit.  Defendant denies that Plaintiff is entitled to the relief requested.

## AFFIRMATIVE DEFENSES TO COUNT III

NOW COMES Defendant WILLIE HEDDEN, by THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., his attorneys, and for his affirmative defenses to Count III of Plaintiff's First Amended Complaint states as follows:

1.     Defendant is entitled to qualified immunity to the extent he followed IDOC policies with respect to his actions taken or not taken with respect to Mr. Earvin at any time during their encounters.

### COUNT IV – 42 U.S.C. §1983 –Deliberate Indifference to Serious Medical Need
**(Eighth Amendment Claim Against Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Lindsey, Duesenberg, Smith, Hill, Conley, Session, Durell, Watson, Eichelberger, and Hubbard)**

74.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE:    Defendant reasserts his responses to paragraphs 1-73 as and for his response to paragraph 74.**

75.     At all relevant times, Mr. Earvin was an inmate in the custody of the IDOC and was subject to the Defendants' care and medical services.

**RESPONSE:    Defendant admits that Mr. Earvin was an inmate of the IDOC. Defendant denies the remaining allegations.**

76. Mr. Earvin had a clearly established right under the United States Constitution to be free from deliberate indifference to his known serious medical needs and to receive proper and adequate medical care while incarcerated and under the custody and control of the Defendants.

**RESPONSE: Defendant admits that Mr. Earvin had constitutional rights. Defendant denies that paragraph 76 accurately sets forth the duty if any owed by Defendant to Plaintiff.**

77. Each Defendant knew or should have known of this clearly established right at the time of the incident that led to Mr. Earvin's death.

**RESPONSE: Defendant denies the allegations of paragraph 77.**

78. Subsequent to the beating inflicted on him by correctional staff, Mr. Earvin was suffering from an objectively serious medical condition in that he had several fractured ribs and various severe neurological and internal injuries, in addition to various bruises, abrasions, and lacerations. His condition was grave.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

79. By virtue of either participating in or being present for the beating of Mr. Earvin, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges were aware that he had suffered serious injuries and had an objectively serious medical need, yet failed to

secure the necessary emergency lifesaving medical treatment he required and/or obstructed or interfered with his access to the requisite medical care.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

80. Defendants Lindsey, Duesenberg, Smith, Hill, Conley, Session, Durell, Watson, Eichelberger, Hubbard, Shipman, and Wohlfiel all had contact with Mr. Earvin subsequent to the beating, observed signs of his deteriorating and critical condition and his serious medical need, yet failed to secure the necessary emergency lifesaving medical treatment he required in a timely manner and/or obstructed or interfered with his access to the requisite medical care.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

81. At all times relevant to the allegations in this Complaint, each Defendant knew of and disregarded the excessive risks associated with Mr. Earvin's serious and life-threatening medical condition.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

82. With deliberate indifference to Mr. Earvin's constitutional right to adequate medical care, the Defendants knowingly failed to adequately examine, treat, and/or care for Mr. Earvin's worsening condition. They did so despite their knowledge of Mr. Earvin's serious medical needs, thereby placing him at risk of serious physical harm, including death. Therefore, the Defendants knew or were aware that Mr. Earvin faced a substantial risk of harm and disregarded this risk by failing to take adequate measures to reduce the risk.

**RESPONSE:** **On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

83.    The acts or omissions of each Defendant were the legal and proximate cause of Mr. Earvin's death.

**RESPONSE:** **On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

84.    The acts and omissions of each Defendant caused Mr. Earvin damages in that he suffered extreme physical and mental pain while in the Defendants' custody.

**RESPONSE:** **On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

85.    The intentional actions or inactions of each Defendant as described herein constituted the unnecessary and wanton infliction of pain upon Mr. Earvin, thereby violating the Eighth Amendment.

**RESPONSE:** **On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit. Defendant denies that Plaintiff is entitled to the relief requested. Defendant further prays that the Court would strike Plaintiff's prayers for damages that are not allowed under the law, specifically all prayers for punitive damages for the state law survival action and wrongful death claims as same are not allowed by law.

## <u>COUNT V – 42 U.S.C. §1983 – Conspiracy</u>
**(All Defendants)**

86.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE:    Defendant reasserts his responses to paragraphs 1-85 as and for his response to paragraph 86.**

87.     Defendants reached an agreement among themselves to deprive Mr. Earvin of his constitutional rights and to protect each other from liability for depriving Mr. Earvin of his rights, as described above.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

88.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

89.     The misconduct described herein was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Earvin's rights.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

90.     As a direct and proximate result of the illicit prior agreement as set forth above, Mr. Earvin's rights were violated and he sustained damages including pain, suffering, emotional distress, injury, and death.

**RESPONSE:  On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

91.  Mr. Earvin's injuries were caused by employees of IDOC who acted pursuant to the *de facto* policies described above at Western Illinois, which were ratified by Watson and Snyder.

**RESPONSE:  On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit.  Defendant denies that Plaintiff is entitled to the relief requested.

## AFFIRMATIVE DEFENSES TO COUNT V

NOW COMES Defendant WILLIE HEDDEN, by THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., his attorneys, and for his affirmative defenses to Count V of Plaintiff's First Amended Complaint states as follows:

1.  Defendant is entitled to qualified immunity to the extent he followed IDOC policies with respect to his actions taken or not taken with respect to Mr. Earvin at any time during their encounters.

## COUNT VI – State Law Claim – Intentional Infliction of Emotional Distress
### (Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, and Banta)

92.  All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE:   Defendant reasserts his responses to paragraphs 1-91 as and for his response to paragraph 92.**

93.     As set forth above, by beating Mr. Earvin to death without legal justification, the Defendant Officers abused their power and engaged in extreme and outrageous conduct.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

94.     The Defendants Officers' actions as set forth above were done intentionally or with the knowledge that there was a strong likelihood that the conduct would inflict severe emotional distress and with reckless disregard of that likelihood.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

95.     The Defendants Officers' actions as set forth above were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Earvin's rights.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

96.     As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including severe emotional distress and great conscious pain and suffering before his death.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit.  Defendant denies that Plaintiff is entitled

to the relief requested. Defendant further prays that the Court would strike Plaintiff's prayers for damages that are not allowed under the law, specifically all prayers for punitive damages for the state law survival action and wrongful death claims as same are not allowed by law.

### AFFIRMATIVE DEFENSES TO COUNT VI

NOW COMES Defendant WILLIE HEDDEN, by THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., his attorneys, and for his affirmative defenses to Count VI of Plaintiff's First Amended Complaint states as follows:

1.      Defendant is entitled to qualified immunity to the extent he followed IDOC policies with respect to his actions taken or not taken with respect to Mr. Earvin at any time during their encounters.

### COUNT VII – State Law Claim – Battery
### (Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, and Banta)

97.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE:    Defendant reasserts his responses to paragraphs 1-96 as and for his response to paragraph 97.**

98.     As set forth above, the Defendant Officers intentionally made physical contact with Mr. Earvin without just cause. This physical contact was offensive and harmful.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

99.     The actions of the Defendant Officers were intentional, willful, and wanton.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

100. The misconduct set forth herein was undertaken with intentional disregard of Mr. Earvin's rights.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

101. As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including great conscious pain and suffering before his death.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit. Defendant denies that Plaintiff is entitled to the relief requested. Defendant further prays that the Court would strike Plaintiff's prayers for damages that are not allowed under the law, specifically all prayers for punitive damages for the state law survival action and wrongful death claims as same are not allowed by law.

## AFFIRMATIVE DEFENSES TO COUNT VII

NOW COMES Defendant WILLIE HEDDEN, by THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., his attorneys, and for his affirmative defenses to Count VII of Plaintiff's First Amended Complaint states as follows:

1. Defendant is entitled to qualified immunity to the extent he followed IDOC policies with respect to his actions taken or not taken with respect to Mr. Earvin at any time during their encounters.

2.      Venue is not proper for this claim as the Court of Claims has exclusive jurisdiction for all claims short of the criminal standard.

3.      Plaintiff may not seek punitive damages and such are not allowed for an estate.

### COUNT VIII – State Law Claim – Negligent or Willful and Wanton Conduct
### (Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, Banta, Watson, and Snyder)

102.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE:     Defendant reasserts his responses to paragraphs 1-101 as and for his response to paragraph 102.**

103.     As set forth above, the actions of the Defendants breached their duty of care to the prisoners in their custody by using excessive force against Mr. Earvin and/or failing to intervene to prevent the use of excessive force against him.

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

104.     In the alternative, the actions of the Defendants were willful and wanton in that they demonstrated complete indifference to the safety of others. Defendants were aware that an injury would likely result from their acts or failures to act and recklessly disregarded the consequences of those acts or failures to act.

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

105.     The misconduct set forth herein was undertaken with intentional disregard of Mr. Earvin's rights.

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

106.     As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including great conscious pain and suffering before his death.

**RESPONSE:     On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit.  Defendant denies that Plaintiff is entitled to the relief requested.  Defendant further prays that the Court would strike Plaintiff's prayers for damages that are not allowed under the law, specifically all prayers for punitive damages for the state law survival action and wrongful death claims as same are not allowed by law.

<u>AFFIRMATIVE DEFENSES TO COUNT VIII</u>

NOW COMES Defendant WILLIE HEDDEN, by THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., his attorneys, and for his affirmative defenses to Count VIII of Plaintiff's First Amended Complaint states as follows:

1.     Defendant is entitled to qualified immunity to the extent he followed IDOC policies with respect to his actions taken or not taken with respect to Mr. Earvin at any time during their encounters.

2.     Defendant denies that this Court has subject matter jurisdiction of this count to the extent Plaintiff's claim is based upon negligence or willful and wanton conduct as alleged. Defendant is entitled to immunity from such claims and same must be filed in the Court of Claims.

3. Defendant denies that Plaintiff may seek punitive damages in a wrongful death or survival action claim based upon Illinois law, as Illinois law bars such damages and therefore moves to strike this claim.

## COUNT IX – State Law Wrongful Death Claim - Battery
## (Against Defendants Hedden, Burnett, Haubrich, and Banta)

107. All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE: Defendant reasserts his responses to paragraphs 1-106 as and for his response to paragraph 107.**

108. As set forth above, the Defendant Officers intentionally made physical contact with Mr. Earvin without just cause. This physical contact was offensive and harmful.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

109. The actions of the Defendant Officers were intentional, willful, and wanton.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

110. The misconduct set forth herein was undertaken with intentional disregard of Mr. Earvin's rights.

**RESPONSE: On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

111. As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including death.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

112.    Plaintiff Larry Pippion claims damages for the wrongful death of Mr. Earvin, and for his loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as for his mental anguish caused by this loss, and for burial and other expenses and damages pursuant to the Illinois Wrongful Death Act.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit.  Defendant denies that Plaintiff is entitled to the relief requested.  Defendant further prays that the Court would strike Plaintiff's prayers for damages that are not allowed under the law, specifically all prayers for punitive damages for the state law survival action and wrongful death claims as same are not allowed by law.

## COUNT X – State Law Wrongful Death Claim - Negligent or Willful and Wanton Conduct
### (Against Defendants Hedden, Burnett, Haubrich, and Banta)

113.    All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE:    Defendant reasserts his responses to paragraphs 1-112 as and for his response to paragraph 113.**

114.    As set forth above, the actions of the Defendants breached their duty of care to the prisoners in their custody by using excessive force against Mr. Earvin and/or failing to intervene to prevent the use of excessive force against him.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

115.    In the alternative, the actions of the Defendants were willful and wanton in that they demonstrated complete indifference to the safety of others. Defendants were aware that an injury would likely result from their acts or failures to act and recklessly disregarded the consequences of those acts or failures to act.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

116.    As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including death.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

117.    Plaintiff Larry Pippion claims damages for the wrongful death of Mr. Earvin, and for his loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as for his mental anguish caused by this loss, and for burial and other expenses and damages pursuant to the Illinois Wrongful Death Act.

**RESPONSE:   On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit.  Defendant denies that Plaintiff is entitled to the relief requested.  Defendant further prays that the Court would strike Plaintiff's prayers for

damages that are not allowed under the law, specifically all prayers for punitive damages for the state law survival action and wrongful death claims as same are not allowed by law.

## AFFIRMATIVE DEFENSES TO COUNT X

NOW COMES Defendant WILLIE HEDDEN, by THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, P.C., his attorneys, and for his affirmative defenses to Count X of Plaintiff's First Amended Complaint states as follows:

1.     Defendant denies that this Court has subject matter jurisdiction of this count to the extent Plaintiff's claim is based upon negligence or willful and wanton conduct as alleged. Defendant is entitled to immunity from such claims and same must be filed in the Court of Claims.

2.     Defendant denies that Plaintiff may seek punitive damages in a Wrongful Death claim as such damages are not allowed under Illinois law.

## COUNT XI – Indemnification

118.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**RESPONSE:     Defendant reasserts his responses to paragraphs 1-117 as and for his response to paragraph 118.**

119.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**RESPONSE:     Defendant admits this allegation.**

120.    One or more Defendants are or were employees of the IDOC and acted within the scope of their employment in committing the misconduct described above.

**RESPONSE:    On counsel's advice, I invoke my right under the Fifth Amendment not to answer, on the grounds that I may incriminate myself.**

121.    The State of Illinois is obligated to pay any judgment entered against individual Defendants within the scope of their employment for IDOC.

**RESPONSE:    Defendant admits this allegation.**

WHEREFORE, Defendant prays that this Court would enter judgment in favor of the Defendant and against the Plaintiff, plus costs of suit.  Defendant denies that Plaintiff is entitled to the relief requested.  Defendant further prays that the Court would strike Plaintiff's prayers for damages that are not allowed under the law, specifically all prayers for punitive damages for the state law survival action and wrongful death claims as same are not allowed by law.

## JURY DEMAND

Defendant demands trial by jury as to all counts and affirmative defenses.

Respectfully Submitted,

WILLIE HEDDEN, Defendant

s/ Theresa M. Powell
Theresa M. Powell, IL ARDC #: 6230402
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
3731 Wabash Avenue
Springfield, IL 62711-6261
Phone: 217.522.8822
Fax:     217.523.3902
Email:  tpowell@heylroyster.com

**PROOF OF SERVICE**

       I hereby certify that on May 11, 2020, I electronically filed the foregoing instrument, ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

       Ronak P. Maisuria
       Michael Oppenheimer
       ERICKSON & OPPENHEIMER LTD
       Suite 200
       223 West Jackson Boulevard
       Chicago, IL 60606
       Email: ronak@eolawus.com
       Email: michael@eolawus.com
       ***Attorneys for Plaintiff***

       Richard D. Frazier
       CHERRY, FRAZIER & SABIN LLP
       Suite 200, Myers Building
       One West Old State Capitol Plaza
       Post Office Box 198
       Springfield, IL 62705-0198
       Email: frazier@springfieldlawfirm.com
       ***Attorney for Defendant Blake Haubrich***

       Laura K. Bautista
       Assistant Attorney General
       Illinois Attorney General's Office
       500 South Second Street
       Springfield, IL 62701
       Email: lbautista@atg.state.il.us
       ***Attorney for Defendants Cody Arens, Benjamin Burnett, Phillip Chenoweth, Shawn Conley, Philip Crary, Eddie Durrell, Joshua Eichelberger, Robert Fishel, Randy Grawe, Derek Hasten, Brett Hendricks, Aaron Hughes (sued as "Huges"), Nolan Kurfman, Daniel Lenning, Matthew Lindsey, Timothy Looker, Jonathon McQuillen, Bradley Pool, Michael Radecki, Jonathon Richmiller, David Session, Tyler Shaw, Brandon Snell, Scott Shipman, Richard Shoopman, Steve Snyder, Jason Sorrells, Susan Surratt (f/k/a Susan Werries), Brandon Syrcle, Steve Thomas, Shawn Volk, Richard Waterstraat, Cameron Watson and Eric Wohlfeil***

Stanley N. Wasser
Howard W. Feldman
FELDMAN WASSER
1307 South Seventh Street
Springfield, IL  62703
Email: swasser@feldman-wasser.com
Email: hfeldman@feldman-wasser.com
***Attorneys for Defendant Alex Banta***

s/ Theresa M. Powell
Theresa M. Powell

TMP/cs (36678-1)
37589978_1.docx