046942/21061/JNR/BJC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

LARRY PIPPION, as Representative of the
Estate of LARRY EARVIN,

        Plaintiff,

v.

SGT. WILLIE HEDDEN, LT. BENJAMIN
BURNETT, LT. BLAKE HAUBRICH,
OFFICER ALEX BANT, WARDEN
CAMERON WATSON, ASSISTANT
WARDEN STEVE SNYDER, LT. TODD
SHEFFLER, OFFICER SYRCLE, OFFICER
SNELL, OFFICER HENDRICKS, SGT.
HASTEN, SGT. VOLK, OFFICER WERRIES,
OFFICER KURFMAN, OFFICER SHAW,
OFFICER RICHMILLER, OFFICER
WATERSTRAAT, OFFICER ARENS,
MAJOR FISHEL, MAJOR CRARY, LT.
SHOOPMAN, LT. SORRELLS, LT.
MCQUILLEN, SGT. LENNING, SGT.
THOMAS, OFFICER LOOKER, OFFICER
POOL, OFFICER GRAWE, OFFICER
CHENOWETH, OFFICER RADECKI,
OFFICER HUGES, LT. LINDSEY, NURSE
DUESENBERG, NURSE PRACTITIONER
SMITH, LCPC HILL, AWP CONLEY,
OFFICER SESSION, LT. DURELL, SGT.
EICHELBERGER, OFFICER SHIPMAN,
AND OFFICER WOHLFIEL, individually,

        Defendants.

Case Number 19-cv-3010

Sue E. Myerscough

## ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES, KAYLIE DUESENBERG, AMANDA HILL, AND CHRISTINA
SMITH, by and through their attorneys, CASSIDAY SCHADE LLP, and pursuant to hereby
submit their Answer to Plaintiff's First Amended Complaint, stating as follows:

## PARTIES

1. Larry Earvin, the decedent, was a 65-year-old prisoner housed at Western Illinois Correctional Center. He died on June 26, 2018 as a result of a violent physical attack upon him by some of the Defendants that occurred on or about May 17, 2018.

ANSWER: Defendants lack sufficient knowledge to admit or deny whether Earvin was violently attacked on June 26, 2018. Defendants deny they participated in an attack on Earvin.

2. At the time of the incident, Mr. Earvin was incarcerated at Western Illinois Correctional Center in Mount Sterling, Illinois. He was imprisoned in 2015 for robbery/theft, and he was scheduled to be released from custody in September 2018.

ANSWER: Defendants admit Earvin was incarcerated at Western Illinois Correctional Center on May 17, 2018. Defendants lack sufficient knowledge to admit or deny the remaining allegations in paragraph 2.

3. Plaintiff, Larry Pippion, is the son of the decedent and has been appointed Representative of Mr. Earvin's estate.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 3.

4.      At all relevant times, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Lindsey, Session, Durell, Eichelberger, Shipman, and Wohlfiel were law enforcement officers employed by the IDOC as correctional staff at the Western Illinois Correctional Center where Mr. Earvin was incarcerated. At all relevant times, these Defendant Officers were acting within the scope of their employment and under color of law. They are sued in their individual capacities.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 4.

5.      At all relevant times, Defendant Cameron Watson was the Warden at the Western Illinois Correctional Center and an employee of the IDOC. Defendant Watson was responsible for the implementation, oversight, and supervision of policies and practices at Western Illinois, and the oversight and discipline of staff there. At all relevant times, Defendant Watson was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 5.

6.      On information and belief, at all relevant times, Defendant Steve Snyder was the Assistant Warden of Operations at Western Illinois and an employee of the IDOC. Defendant Snyder was responsible for the implementation, oversight, and supervision of policies and practices at Western Illinois, and the oversight and discipline of staff there. At all relevant times, Defendant Snyder was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 6.

      7.     At all relevant times, Defendants Duesenberg, Whitaker, Smith, Hill, and Conley (hereinafter "Medical Staff Defendants") worked at Western Illinois Correctional Center as part of the medical staff. At all relevant times, the Medical Staff Defendants were acting under color of law and within the scope of their employment. They are sued in their individual capacities.

ANSWER: Defendants Smith and Duesenberg admit they were employed as part of the medical staff at Western on May 17, 2018. Defendant Hill denies she was a medical professional because she was part of mental health staff. Defendants admit they were acting under color of law within the scope of their employment at all times relevant. Defendants lack sufficient knowledge to admit or deny the remaining allegations in paragraph 7.

<b>JURISDICTION AND VENUE</b>

      8.     This case includes claims for relief under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1331 and 1367.

ANSWER: Admitted.

      9.     Venue is proper under 28 U.S.C. § 1391(b).

ANSWER: Admitted.

<b>FACTUAL ALLEGATIONS</b>

<b>The Initial Physical Encounter Between Correctional Staff and Mr. Earvin</b>

      10.     On or about May 17, 2018, at or about 1:10 p.m., Defendant Syrcle verbally engaged with Mr. Earvin. This encounter caused Defendant Syrcle to call for Defendant Burnett.

4

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 10.

11. At or about 1:20 p.m., Defendant Burnett entered the wing where Mr. Earvin and Defendant Syrcle were.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 11.

12. At or about 1:23 p.m., Defendants Snell, Burnett, and Syrcle engaged in a physical altercation with Mr. Earvin.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 12.

13. During the foregoing altercation, without just cause or provocation, Defendant Burnett pepper sprayed Mr. Earvin.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 13.

14. Lt. Burnett then called a Code 1 (Staff in Distress), to which various Defendants, including without limitation Defendants Hedden, Hendricks, Banta, and Sheffler, responded.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 14.

15. Defendants Burnett, Snell, and Syrcle handcuffed Mr. Earvin behind his back.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 15.

16.     At or about 1:25 p.m., Mr. Earvin was then dragged to segregation by various Defendant Officers, including without limitation Defendants Hedden, Hendricks, Banta, and Sheffler.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 16.

### Defendants' Vicious And Deadly Attack On Mr. Earvin While He Was Handcuffed

17.     Once in the segregation area at or about 1:30 p.m. and with knowledge that this was an area where there were no video cameras to capture what would occur, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges either beat and viciously attacked Mr. Earvin while he was on the ground and handcuffed behind his back or observed this and failed to intervene despite having a reasonable opportunity to do so. The beating administered to Mr. Earvin includes without limitation the Defendants punching and kicking Mr. Earvin in his ribs repeatedly and striking him about the head.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 17.

18.     Witness statements indicate that up to 30-40 officers were involved and/or present as Mr. Earvin was beaten to the point that he would eventually succumb to his injuries and die weeks later.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 18.

19.     As the beating was occurring, none of the Defendant Officers intervened in their fellow officers' use of force despite having a reasonable opportunity to do so.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 19.

**The Cover-Up Begins**

20.     At or about 1:45 p.m., Defendant Nurse Duesenberg arrived at Mr. Earvin's cell and performed a medical assessment. Despite the obvious severity and nature of Mr. Earvin's extensive injuries which would have been immediately visible to her, Defendant Duesenberg failed to provide Mr. Earvin with adequate medical attention or procure him the necessary emergency medical attention, instead simply cleaning various abrasions, bandaging his bleeding head, and performing a vitals check. She noted only that his nose was running (presumably from the OC spray), he had cuts on his forehead, and that he had abrasions to his left shoulder, left knee, and left toe.

ANSWER: Defendants admit Defendant Duesenberg evaluated Earvin at his cell, noting cuts and abrasions. Defendants deny the remaining allegations contained in paragraph 20.

21.     Defendant Duesenberg was aware from her assessment that Mr. Earvin had been seriously injured, including without limitation that he had sustained injuries that affected his ability to properly breathe.

ANSWER: Denied.

22.     Defendant Duesenberg falsified medical reports to indicate that Mr. Earvin had only minor injuries and did not complain of any pain other than his head/face area. Her report of her initial assessment indicates that Mr. Earvin was in "minimal distress" despite "facial grimacing and audible grunting present" and that he was "coached to breath[e] in through nose and out through mouth."

ANSWER: Denied.

23.     Duesenberg's report indicates that the plan for treatment was to place Mr. Earvin on continuous watch, administer ibuprofen for pain, re-evaluation in the afternoon by the nurse on shift, and a "follow-up at final destination due to being transferred out tomorrow 5/18/18 per security."

ANSWER: Defendants admit Defendant Duesenberg's report is as reflected in the medical records, but lack sufficient knowledge to admit or deny the specifics due to not possessing said report at this time.

24.     Recognizing the severity of Mr. Earvin's injuries and not wanting to be subject to investigation or repercussions, as Mr. Earvin was slowly dying from his injuries, the Defendants had devised a plan to transfer Mr. Earvin in the morning to another facility.

ANSWER: Denied.

25.     Defendant Lt. Lindsey was present for Duesenberg's initial medical assessment of Mr. Earvin and observed Mr. Earvin's extensive and obvious severe medical injuries, but did nothing to procure him the immediate emergency medical attention he required.

ANSWER: Denied.

26.     At or about 1:50 p.m., Defendant Watson and Deputy Director Eilers were notified of the altercation between staff and Mr. Earvin.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 26.

27.     While Mr. Earvin lay in a cell suffering from the injuries that would shortly thereafter claim his life, medical staff treated the Defendants who viciously attacked him for the various scratches they had received while beating him and administered tetanus shots to some of the officer Defendants because they had been exposed to Mr. Earvin's blood while they beat him to death.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 27.

28.     At or about 2:15 p.m., Defendant Session had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing other than photograph them.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 28.

29.     At or about 2:30 p.m., Defendant Conley placed Mr. Earvin under a crisis care watch due to "unusual behavior that [was] concerning and need for further observation." Despite observing Mr. Earvin's extensive and obvious serious medical injuries, Defendant Conley did nothing to obtain Mr. Earvin the immediate emergency medical attention he required.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 29.

30.     At or about 3:00 p.m., Defendants Hubbard and Eichelberger moved Mr. Earvin from his segregation cage to cell Receiving 38 so he could be placed on "continuous watch" (where there was to be both verbal and visual line of sight monitoring continuously) at which time Mr. Earvin vomited on the Defendants and the floor. Despite observing Mr. Earvin's extensive and obvious serious medical injuries, these Defendants did nothing to obtain Mr. Earvin the necessary medical attention, instead simply going to complete workman's compensation packets in the event something adverse happened to them from their contact with Mr. Earvin's vomit.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 30.

31.     Defendant Hill initiated the continuous watch for Mr. Earvin.

ANSWER: Defendants admit Defendant Hill initiated a continuous crisis watch for Earvin.

32.     It was clear to Defendant Hill that Mr. Earvin's condition was critical and that he required immediate emergency medical attention. Rather than procuring him the necessary immediate emergency medical attention, she falsely noted in her medical paperwork as part of a conspiracy to possibly cover up Mr. Earvin's imminent death that there had been reports that Mr. Earvin was at risk for suicide and that he was acting strangely. She indicated that he was unable to answer questions and characterized his loss of consciousness as "falling asleep."

ANSWER: Denied.

33.     Defendants Duesenberg and Smith were made aware that Mr. Earvin was vomiting. At this point, having no choice but to expand the universe of individuals who would become aware of this incident, Smith discussed Mr. Earvin's condition with one of the doctors on call via telephone.

10

ANSWER: Defendants admit Defendants Duesenberg and Smith became aware that Earvin was vomiting and contacted a physician by telephone. Defendants deny the remaining allegations contained in paragraph 33.

34. Smith did not fully apprise the doctor on the phone of the reality of Mr. Earvin's condition, instead limiting the information provided to the fact that he was vomiting and minimizing the nature of his injuries. Due to this misinformation, the recommendation obtained was to transfer Mr. Earvin to the Health Care Unit's infirmary and conduct neurological checks.

ANSWER: Denied.

35. Had Smith told the truth regarding Mr. Earvin's obvious critical condition, the recommendation would have been to get him immediate emergency medical attention.

ANSWER: Denied.

36. Despite being ordered to conduct neurological checks, none of the medical staff Defendants involved who were responsible for Mr. Earvin's care and his physical well-being appropriately did so. They prepared a form titled "Flow Sheet" in which they put together a neurological checklist of vitals to be taken and observations regarding Mr. Earvin's mental state, pupils muscle tone, and movements to be logged. The Defendants failed to log anything on the Flow Sheet because they recognized that Mr. Earvin's condition was grave and they did not want to leave a paper trail regarding their recognition of such and their abysmal failure to abide by their oaths when they ignored his condition and refused to obtain him the necessary medical care.

ANSWER: Denied.

37.     At or about 3:15 p.m. and then again approximately half an hour later, Defendant Durell had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 37.

38.     Between about 3:00 p.m. when he was placed in Receiving 38 and the time he departed the facility via ambulance, Defendants Hill, Eichelberger, Shipman, and Wohlfiel had contact with Mr. Earvin in which as part of the continuous watch on which he had been placed, they observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 38.

39.     At or about 3:59 p.m., Defendant Watson came to Receiving 38 and had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 39.

40.     The gravity of the situation and the critical nature of Mr. Earvin's condition was obvious to those who had observed him.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 40.

41.    At or about 4:15 p.m., Defendants Durell, Eichelberger, and Duesenberg pushed Earvin in a wheelchair to the Health Care Unit and placed him in an isolation cell. During this transfer, he vomited again, and his head was bleeding. Despite observing his extensive and obvious serious medical injuries, none of these Defendants procured him the necessary emergency medical attention.

ANSWER:    Defendants admit Defendant Duesenberg assisted in bringing Earvin to the Healthcare Unit. Defendants deny the remaining allegations contained in paragraph 41.

42.    After the transfer to the Health Care Unit, Duesenberg telephoned the doctor and informed him that there was a change in Mr. Earvin's vitals – his oxygen levels were lower and he was having difficulty breathing. The doctor advised that Mr. Earvin should be sent to an outside hospital, and finally, over three hours after the vicious, violent attack by the Defendant Officers in which Mr. Earvin was beaten to the point where his injuries were visibly apparent and obviously severe to all who observed him in this time period, an ambulance was called.

ANSWER:    Defendants admit that after Earvin arrived in the Healthcare Unit, Defendant Duesenberg telephoned the doctor, conveyed Earvin's status, and obtained direction from the doctor to send Earvin to the hospital. Defendants deny the remaining allegations contained in paragraph 42.

43.    At or about 4:40 p.m., an ambulance was finally on the grounds. Emergency medical staff transported Mr. Earvin to Culbertson Memorial Hospital via ambulance.

ANSWER:    Defendants admit that Earvin was taken to the hospital by ambulance but lack sufficient knowledge to know the exact time.

44.     Reports by the Defendant Officers involved, including without limitation Defendants Hedden and Banta, falsely indicate that Mr. Earvin was turned over to staff in segregation "without further incident."

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 44.

### Mr. Earvin's Physical Injuries

45.     Once Mr. Earvin arrived at Culbertson at approximately 5:37 p.m., medical staff there immediately recognized they were ill-equipped to handle Mr. Earvin's grave condition and he was airlifted via helicopter to St. John's Hospital in Springfield, Illinois. Prior to being airlifted, he was intubated.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 45.

46.     Mr. Earvin was received at St. John's at approximately 8:20 p.m. Once there, he was diagnosed with approximately 15 rib fractures, multiple abrasions, lacerations, and hemorrhages, and severe neurological and internal injuries. By the morning of May 18, he was intubated and on full ventilator support with no neurological response or corneal reflex. He was diagnosed with a large left frontal hematoma to his head. He had undergone surgery due to low blood pressure and bleeding out. He was diagnosed with an intercostal artery bleed and a mesenteric bleed secondary to assault. He had surgery to remove a portion of his bowel, leading to an ileostomy bag being placed for waste removal. His blood loss was severe and he required rapid blood transfusion during his surgical procedures. In short, his condition was critical from the beating he had sustained less than 24 hours earlier, and he was at death's door.

14

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 46.

47. In addition to the foregoing, as a result of the chest trauma he sustained from the altercation, Mr. Earvin had pneumonia, a tracheostomy tube, and a chest tube to drain fluids.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 47.

48. As a direct result of Defendants' misconduct, Mr. Earvin experienced unnecessary pain and suffering. He succumbed to his injuries and died on June 26, 2018.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 48.

49. Following his death, the pathologist who conducted Mr. Earvin's autopsy concluded that Mr. Earvin died of blunt trauma to the chest and abdomen. His manner of death was ruled a homicide.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 49.

50. As a direct result of Defendants' misconduct, Plaintiff Pippion suffered injury, including without limitation extreme pain and suffering caused by the untimely death of his father, Mr. Earvin.

ANSWER: Denied.

**Violence Against Prisoners By Staff At Western Illinois Correctional Center Was Pervasive And Well-Known**

51. The attack on Mr. Earvin was not an isolated incident at Western Illinois as unjustified violence against prisoners at the facility is a common occurrence.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 51.

52. It was common knowledge amongst medical staff. correctional staff. and supervisory personnel that correctional officers were routinely taking inmates to holding cells in segregation and beating them in these locations due to the absence of cameras.

ANSWER: Defendants deny they possessed such knowledge.

53 Despite this widespread culture of violence. Defendants Watson and Snyder failed to take any meaningful action to prevent prisoners like Mr. Earvin from being harmed by officers charged with protecting them.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 53.

54. IDOC policy requires officers who use force to write reports documenting the circumstances surrounding that use of force. On information and belief. Defendants Watson and Snyder reviewed these reports as well as grievances that may have been written complaining about prior instances of excessive force.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 54.

55. Despite their awareness of the issue. Defendants Watson and Snyder failed to provide adequate supervision. discipline or training. or take any action to prevent repeated instances of excessive force by their co-Defendants.

ANSWER: Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 55.

**COUNT I – 42 U.S.C. §1983 – Excessive Force Constituting Cruel and Unusual Punishment (Eighth Amendment Claim Against Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges)**

56.     All of the prior paragraphs are incorporated by reference as though fully set forth

herein.

ANSWER:   Count I is not directed toward these Defendants.   To the extent an answer is

required, Defendants deny the allegations.

**COUNT II – 42 U.S.C. §1983 – Failure to Intervene (Eighth Amendment Claim Against Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Watson, and Snyder)**

61.     All of the prior paragraphs are incorporated by reference as though fully set forth

herein.

ANSWER:   Count II is not directed toward these Defendants.   To the extent an answer is

required, Defendants deny the allegations.

**COUNT III – 42 U.S.C. §1983 – Failure to Protect (Eighth Amendment Claim Against Watson and Snyder)**

66.     All of the prior paragraphs are incorporated by reference as though fully set forth

herein.

ANSWER:   Count III is not directed toward these Defendants.   To the extent an answer is

required, Defendants deny the allegations.

**COUNT IV – 42 U.S.C. §1983 –Deliberate Indifference to Serious Medical Need**
**(Eighth Amendment claim against Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Lindsey, Duesenberg, Smith, Hill, Conley, Session, Durell, Watson, Eichelberger, and Hubbard)**

74.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants having answered the preceding paragraphs incorporate those answers by reference as if fully set forth herein.

75.     At all relevant times, Mr. Earvin was an inmate in the custody of the IDOC and was subject to the Defendants' care and medical services.

ANSWER: Defendants admit that Earvin was an inmate and therefore generally received medical services within IDOC. Defendants deny he was specifically under their individual care at all relevant times.

76.     Mr. Earvin had a clearly established right under the United States Constitution to be free from deliberate indifference to his known serious medical needs and to receive proper and adequate medical care while incarcerated and under the custody and control of the Defendants.

ANSWER: Defendants admit Earvin had an Eighth Amendment right to medical treatment but deny Plaintiff has fully or adequately alleged that right.

77.     Each Defendant knew or should have known of this clearly established right at the time of the incident that led to Mr. Earvin's death.

ANSWER: Defendants deny these allegations as vague and immaterial.

78.     Subsequent to the beating inflicted on him by correctional staff, Mr. Earvin was suffering from an objectively serious medical condition in that he had several fractured ribs and various severe neurological and internal injuries, in addition to various bruises, abrasions, and lacerations. His condition was grave.

ANSWER:   Defendants admit Earvin's injuries are as documented in the medical records. Defendants deny the remaining allegations contained in paragraph 78.

79.     By virtue of either participating in or being present for the beating of Mr. Earvin, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges were aware that he had suffered serious injuries and had an objectively serious medical need, yet failed to secure the necessary emergency lifesaving medical treatment he required and/or obstructed or interfered with his access to the requisite medical care.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 79.

80.     Defendants Lindsey, Duesenberg, Smith, Hill, Conley, Session, Durell, Watson, Eichelberger, Hubbard, Shipman, and Wohlfiel all had contact with Mr. Earvin subsequent to the beating, observed signs of his deteriorating and critical condition and his serious medical need, yet failed to secure the necessary emergency lifesaving medical treatment he required in a timely manner and/or obstructed or interfered with his access to the requisite medical care.

ANSWER:  Denied.

81. At all times relevant to the allegations in this Complaint, each Defendant knew of and disregarded the excessive risks associated with Mr. Earvin's serious and life-threatening medical condition.

ANSWER: Denied.

82. With deliberate indifference to Mr. Earvin's constitutional right to adequate medical care, the Defendants knowingly failed to adequately examine, treat, and/or care for Mr. Earvin's worsening condition. They did so despite their knowledge of Mr. Earvin's serious medical needs, thereby placing him at risk of serious physical harm, including death. Therefore, the Defendants knew or were aware that Mr. Earvin faced a substantial risk of harm and disregarded this risk by failing to take adequate measures to reduce the risk.

ANSWER: Denied.

83. The acts or omissions of each Defendant were the legal and proximate cause of Mr. Earvin's death.

ANSWER: Denied.

84. The acts and omissions of each Defendant caused Mr. Earvin damages in that he suffered extreme physical and mental pain while in the Defendants' custody.

ANSWER: Denied.

85. The intentional actions or inactions of each Defendant as described herein constituted the unnecessary and wanton infliction of pain upon Mr. Earvin, thereby violating the Eighth Amendment.

ANSWER: Denied.

## COUNT V – 42 U.S.C. §1983 – Conspiracy
### (All Defendants)

86.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants having answered the preceding paragraphs incorporate those answers by reference as if fully set forth herein

87.     Defendants reached an agreement among themselves to deprive Mr. Earvin of his constitutional rights and to protect each other from liability for depriving Mr. Earvin of his rights, as described above.

ANSWER: Denied.

88.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

ANSWER: Denied.

89.     The misconduct described herein was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Earvin's rights.

ANSWER: Denied.

90.     As a direct and proximate result of the illicit prior agreement as set forth above, Mr. Earvin's rights were violated and he sustained damages including pain, suffering, emotional distress, injury, and death.

ANSWER: Denied.

91.     Mr. Earvin's injuries were caused by employees of IDOC who acted pursuant to the *de facto* policies described above at Western Illinois. which were ratified by Watson and Snyder.

ANSWER:  Defendants lack sufficient knowledge to admit or deny the allegations as set forth in paragraph 91.

**COUNT VI – State Law Claim – Intentional Infliction of Emotional Distress**
**(Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich. and Banta)**

ANSWER:   Count VI is not directed toward these Defendants.   To the extent an answer is required, Defendants deny the allegations.

**COUNT VII – State Law Claim – Battery**
**(Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, and Banta)**

ANSWER:   Count VII is not directed toward these Defendants.   To the extent an answer is required, Defendants deny the allegations.

**COUNT VIII – State Law Claim – Negligent or Willful and Wanton Conduct**

**(Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, Banta, Watson, and Snyder)**

ANSWER:   Count VIII is not directed toward these Defendants.   To the extent an answer is required, Defendants deny the allegations.

**COUNT IX – State Law Wrongful Death Claim - Battery**
**(Against Defendants Hedden, Burnett, Haubrich, and Banta)**

ANSWER:   Count IX is not directed toward these Defendants.   To the extent an answer is required, Defendants deny the allegations.

**COUNT X – State Law Wrongful Death Claim - Negligent or Willful and Wanton Conduct**
**(Against Defendants Hedden, Burnett, Haubrich, and Banta)**

ANSWER: Count X is not directed toward these Defendants. To the extent an answer is required, Defendants deny the allegations.

Count XI – Indemnification

ANSWER: Count XI is not directed toward these Defendants. To the extent an answer is required, Defendants deny the allegations.

**DEFENDANTS DEMAND TRIAL BY JURY**.

**AFFIRMATIVE DEFENSES**

1. At all times relevant herein, Defendants acted in good faith in the performance of their official duties and without violating decedent's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.[1]

2. At all times relevant herein, Defendants acted in good faith and in conformity with existing precedent. They are therefore entitled to good faith immunity from damages. *Janus v. Am. Fed'n. of State*, 942 F.3d 352 (7th Cir. 2019).

**DEFENDANTS DEMAND TRIAL BY JURY AS TO THEIR AFFIRMATIVE DEFENSES**

WHEREFORE, for the above reasons, Defendants respectfully request this Honorable Court deny Plaintiff any relief in this matter and grant Defendants judgment as to all matters and any other relief deemed appropriate, including cost of suit.

---

[1] Defendants acknowledge in *Estate of Clark v. Walker*, 865 F.3d 544, 550-51 (7th Cir. 2017), the Seventh Circuit rejected qualified immunity for contractual government employees. Defendants assert this defense to preserve it for appeal.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Joseph N. Rupcich
     Attorneys for KAYLIE DUESENBERG,
     LAUREN HILL, AND CHRISTINA SMITH

Joseph N. Rupcich
ARDC No. 6283899
CASSIDAY SCHADE LLP
111 North Sixth Street, 2nd Floor
Springfield, IL 62701
(217) 572-1714
(217) 572-1613 (Fax)
jrupcich@cassiday.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2020, I electronically filed the foregoing Answer with the

Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice

of E-Filing" to the following:

Ronak Maisuria, Esq.
Michael Oppenheimer, Esq.
Erickson & Oppenheimer Ltd.
223 W. Jackson, Suite 200
Chicago IL 60606

Jon F Erickson, Esq.
Erickson Davis Murphy Johnson & Walsh, Ltd.
132 S. Water Street, Suite 610
Decatur IL 62523

Laura K. Bautista, Esq.
Assistant Attorney General
500 South Second Street
Springfield IL 62701

Theresa Powell
Heyl Royster Voelker & Allen
3731 Wabash Avenue
P.O. Box 9678
Springfield IL 62791

Richard D Frazier, Esq.
Cherry Frazier & Sabin, LLP
1 West Old State Capitol Plaza , Suite 200 Myers Building
P O Box 198
Springfield IL 62705-0198

Stanley N Wasser, Esq.
Howard W. Feldman
Feldman Wasser
1307 S 7th Street
Po Box 2418
Springfield IL 62705

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct.

/s/ Joseph N. Rupcich

9504971 JRUPCICH;SPRESSLE