**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

LARRY PIPPION, as Representative of )
the Estate of Larry Earvin, )
                              )
          Plaintiff, )
                              )
    -vs- )      No. 19-3010-SEM
                              )
SGT. WILLIE HEDDEN, LT. BENJAMIN )
BURNETT, LT. BLAKE HAUBRICH, )
C/O ALEX BANTA, WARDEN )
CAMERON WATSON, ASST. WARDEN )
STEVE SNYDER, Individually, et al., )
                              )
          Defendants. )

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST AMEMDED COMPLAINT**

       NOW COMES Defendant, Derek Hasten, by and through his attorney, Kwame Raoul,

Attorney General of the State of Illinois, and for their Response to Plaintiff's First Amended

Complaint, [Doc. 66], states as follows:

**NATURE OF THE CASE**

       This is an action seeking remedies for the deprivation of Larry Earvin's constitutionally

protected rights resulting in his death while in the custody of the Illinois Department of

Corrections (hereinafter "IDOC").

       **ANSWER:** Defendant admits that Plaintiff has described the nature of this action, but

deny that he is entitled to any relief in this matter.

## PARTIES

1.     Larry Earvin, the decedent, was a 65-year-old prisoner housed at Western Illinois Correctional Center. He died on June 26, 2018 as a result of a violent physical attack upon him by some of the Defendants that occurred on or about May 17, 2018.

**ANSWER:** Defendant admits that Mr. Earvin was formerly housed at Western Illinois Correctional Center. Defendant denies any claim he attacked Plaintiff at any time, but lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 1.

2.     At the time of the incident, Mr. Earvin was incarcerated at Western Illinois Correctional Center in Mount Sterling, Illinois. He was imprisoned in 2015 for robbery/theft, and he was scheduled to be released from custody in September 2018.

**ANSWER:** Defendant admits that Mr. Earvin was incarcerated at Western Illinois Correctional Center in Mount Sterling. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 2.

3.     Plaintiff, Larry Pippion, is the son of the decedent and has been appointed Representative of Mr. Earvin's estate.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 3.

4.     At all relevant times, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Lindsey, Session, Durell, Eichelberger, Shipman, and Wohlfiel were law enforcement officers employed by the IDOC as correctional staff at the Western

Illinois Correctional Center where Mr. Earvin was incarcerated. At all relevant times, these Defendant Officers were acting within the scope of their employment and under color of law. They are sued in their individual capacities.

**ANSWER:** Defendant admits Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Lindsey, Session, Durell, Eichelberger, Shipman, and Wohlfiel were employed as security staff at Western Illinois Correctional Center. Defendant admits that he was acting within the scope of his employment and under color of law. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 4.

5.      At all relevant times, Defendant Cameron Watson was the Warden at the Western Illinois Correctional Center and an employee of the IDOC. Defendant Watson was responsible for the implementation, oversight, and supervision of policies and practices at Western Illinois, and the oversight and discipline of staff there. At all relevant times, Defendant Watson was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

**ANSWER:** Defendant admits that Defendant Watson was the Warden at Western Illinois Correctional Center. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 5.

6.      On information and belief, at all relevant times, Defendant Steve Snyder was the Assistant Warden of Operations at Western Illinois and an employee of the IDOC. Defendant Snyder was responsible for the implementation, oversight, and supervision of policies and practices at Western Illinois, and the oversight and discipline of staff there. At all relevant times,

Defendant Snyder was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

**ANSWER:** Defendant admits that Defendant Snyder was the Assistant Warden of Operations at Western Illinois Correctional Center. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 6.

7.      At all relevant times, Defendants Duesenberg, Whitaker, Smith, Hill, and Conley (hereinafter "Medical Staff Defendants") worked at Western Illinois Correctional Center as part of the medical staff. At all relevant times, the Medical Staff Defendants were acting under color of law and within the scope of their employment. They are sued in their individual capacities.

**ANSWER:** Defendant denies that Defendants Conley and Hill were part of the medical staff at Western Correctional Center. Defendant admits Whitaker and Smith were part of the medical staff at Western Illinois Correctional Center. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 7.

## JURISDICTION AND VENUE

8.      This case includes claims for relief under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1331 and 1367.

**ANSWER:** Defendant admits that the United States District Court for the Central District of Illinois has jurisdiction over this action. Defendant admits that Plaintiff purports to bring this action pursuant to 28 U.S.C. §§ 1331 and 1367.

9.      Venue is proper under 28 U.S.C. § 1391(b).

**ANSWER:** Defendant admits that venue is proper in the United States District Court for the Central District of Illinois.

## FACTUAL ALLEGATIONS

**The Initial Physical Encounter Between Correctional Staff and Mr. Earvin**

10.     On or about May 17, 2018, at or about 1:10 p.m., Defendant Syrcle verbally engaged with Mr. Earvin. This encounter caused Defendant Syrcle to call for Defendant Burnett.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 10.

11.     At or about 1:20 p.m., Defendant Burnett entered the wing where Mr. Earvin and Defendant Syrcle were.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 11.

12.     At or about 1:23 p.m., Defendants Snell, Burnett, and Syrcle engaged in a physical altercation with Mr. Earvin.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 12.

13.     During the foregoing altercation, without just cause or provocation, Defendant Burnett pepper sprayed Mr. Earvin.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 13.

14.     Lt. Burnett then called a Code 1 (Staff in Distress), to which various Defendants, including without limitation Defendants Hedden, Hendricks, Banta, and Sheffler, responded.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 14.

15. Defendants Burnett, Snell, and Syrcle handcuffed Mr. Earvin behind his back.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 15.

16. At or about 1:25 p.m., Mr. Earvin was then dragged to segregation by various Defendant Officers, including without limitation Defendants Hedden, Hendricks, Banta, and Sheffler.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 16.

**Defendants' Vicious And Deadly Attack On Mr. Earvin While He Was Handcuffed**

17. Once in the segregation area at or about 1:30 p.m. and with knowledge that this was an area where there were no video cameras to capture what would occur, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges either beat and viciously attacked Mr. Earvin while he was on the ground and handcuffed behind his back or observed this and failed to intervene despite having a reasonable opportunity to do so. The beating administered to Mr. Earvin includes without limitation the Defendants punching and kicking Mr. Earvin in his ribs repeatedly and striking him about the head.

**ANSWER:** Defendant denies that he beat or attacked Mr. Earvin or that he had a reasonable opportunity to intervene. Defendant admits that he observed some officers making kicking and punching motions but was unable to observe who made physical contact with Mr. Earvin. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 17.

18.     Witness statements indicate that up to 30-40 officers were involved and/or present as Mr. Earvin was beaten to the point that he would eventually succumb to his injuries and die weeks later.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 18.

19.     As the beating was occurring, none of the Defendant Officers intervened in their fellow officers' use of force despite having a reasonable opportunity to do so.

**ANSWER:** Defendant admits that he did not intervene but denies that he had a reasonable opportunity to intervene.  Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 19.

### The Cover-Up Begins

20.     At or about 1:45 p.m., Defendant Nurse Duesenberg arrived at Mr. Earvin's cell and performed a medical assessment. Despite the obvious severity and nature of Mr. Earvin's extensive injuries which would have been immediately visible to her, Defendant Duesenberg failed to provide Mr. Earvin with adequate medical attention or procure him the necessary emergency medical attention, instead simply cleaning various abrasions, bandaging his bleeding head, and performing a vitals check. She noted only that his nose was running (presumably from the OC spray), he had cuts on his forehead, and that he had abrasions to his left shoulder, left knee, and left toe.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 20.

21.     Defendant Duesenberg was aware from her assessment that Mr. Earvin had been seriously injured, including without limitation that he had sustained injuries that affected his

ability to properly breathe.

**ANSWER**: Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 21.

22.     Defendant Duesenberg falsified medical reports to indicate that Mr. Earvin had only minor injuries and did not complain of any pain other than his head/face area. Her report of her initial assessment indicates that Mr. Earvin was in "minimal distress" despite "facial grimacing and audible grunting present" and that he was "coached to breath[e] in through nose and out through mouth."

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 22.

23.     Duesenberg's report indicates that the plan for treatment was to place Mr. Earvin on continuous watch, administer ibuprofen for pain, re-evaluation in the afternoon by the nurse on shift, and a "follow-up at final destination due to being transferred out tomorrow 5/18/18 per security."

**ANSWER**: Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 23.

24.     Recognizing the severity of Mr. Earvin's injuries and not wanting to be subject to investigation or repercussions, as Mr. Earvin was slowly dying from his injuries, the Defendants had devised a plan to transfer Mr. Earvin in the morning to another facility.

**ANSWER**: Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 24.

25.     Defendant Lt. Lindsey was present for Duesenberg's initial medical assessment of Mr. Earvin and observed Mr. Earvin's extensive and obvious severe medical injuries, but did

nothing to procure him the immediate emergency medical attention he required.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 25.

26.     At or about 1:50 p.m., Defendant Watson and Deputy Director Eilers were notified of the altercation between staff and Mr. Earvin.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 26.

27.     While Mr. Earvin lay in a cell suffering from the injuries that would shortly thereafter claim his life, medical staff treated the Defendants who viciously attacked him for the various scratches they had received while beating him and administered tetanus shots to some of the officer Defendants because they had been exposed to Mr. Earvin's blood while they beat him to death.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 27.

28.     At or about 2:15 p.m., Defendant Session had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing other than photograph them.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 28.

29.     At or about 2:30 p.m., Defendant Conley placed Mr. Earvin under a crisis care watch due to "unusual behavior that [was] concerning and need for further observation." Despite observing Mr. Earvin's extensive and obvious serious medical injuries , Defendant Conley did nothing to obtain Mr. Earvin the immediate emergency medical attention he required.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 29.

30.     At or about 3:00 p.m., Defendants Hubbard and Eichelberger moved Mr. Earvin from his segregation cage to cell Receiving 38 so he could be placed on "continuous watch" (where there was to be both verbal and visual line of sight monitoring continuously) at which time Mr. Earvin vomited on the Defendants and the floor. Despite observing Mr. Earvin's extensive and obvious serious medical injuries, these Defendants did nothing to obtain Mr. Earvin the necessary medical attention, instead simply going to complete workman's compensation packets in the event something adverse happened to them from their contact with Mr. Earvin's vomit.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 30.

31.     Defendant Hill initiated the continuous watch for Mr. Earvin.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 31.

32.     It was clear to Defendant Hill that Mr. Earvin's condition was critical and that he required immediate emergency medical attention. Rather than procuring him the necessary immediate emergency medical attention, she falsely noted in her medical paperwork as part of a conspiracy to possibly cover up Mr. Earvin's imminent death that there had been reports that Mr. Earvin was at risk for suicide and that he was acting strangely. She indicated that he was unable to answer questions and characterized his loss of consciousness as "falling asleep."

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 32.

33.     Defendants Duesenberg and Smith were made aware that Mr. Earvin was vomiting. At this point, having no choice but to expand the universe of individuals who would become aware of this incident, Smith discussed Mr. Earvin's condition with one of the doctors on call via telephone.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 33.

34.     Smith did not fully apprise the doctor on the phone of the reality of Mr. Earvin's condition, instead limiting the information provided to the fact that he was vomiting and minimizing the nature of his injuries. Due to this misinformation, the recommendation obtained was to transfer Mr. Earvin to the Health Care Unit's infirmary and conduct neurological checks.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 34.

35.     Had Smith told the truth regarding Mr. Earvin's obvious critical condition, the recommendation would have been to get him immediate emergency medical attention.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 35.

36.     Despite being ordered to conduct neurological checks, none of the medical staff Defendants involved who were responsible for Mr. Earvin's care and his physical well-being appropriately did so. They prepared a form titled "Flow Sheet" in which they put together a neurological checklist of vitals to be taken and observations regarding Mr. Earvin's mental state, pupils muscle tone, and movements to be logged. The Defendants failed to log anything on the Flow Sheet because they recognized that Mr. Earvin's condition was grave and they did not want

to leave a paper trail regarding their recognition of such and their abysmal failure to abide by their oaths when they ignored his condition and refused to obtain him the necessary medical care.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 36.

37. At or about 3:15 p.m. and then again approximately half an hour later, Defendant Durell had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 37.

38. Between about 3:00 p.m. when he was placed in Receiving 38 and the time he departed the facility via ambulance, Defendants Hill, Eichelberger, Shipman, and Wohlfiel had contact with Mr. Earvin in which as part of the continuous watch on which he had been placed, they observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 38.

39. At or about 3:59 p.m., Defendant Watson came to Receiving 38 and had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 39.

40.     The gravity of the situation and the critical nature of Mr. Earvin's condition was obvious to those who had observed him.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 40.

41.     At or about 4:15 p.m., Defendants Durell, Eichelberger, and Duesenberg pushed Earvin in a wheelchair to the Health Care Unit and placed him in an isolation cell. During this transfer, he vomited again, and his head was bleeding. Despite observing his extensive and obvious serious medical injuries, none of these Defendants procured him the necessary emergency medical attention.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 41.

42.     After the transfer to the Health Care Unit, Duesenberg telephoned the doctor and informed him that there was a change in Mr. Earvin's vitals -his oxygen levels were lower and he was having difficulty breathing. The doctor advised that Mr. Earvin should be sent to an outside hospital, and finally, over three hours after the vicious, violent attack by the Defendant Officers in which Mr. Earvin was beaten to the point where his injuries were visibly apparent and obviously severe to all who observed him in this time period, an ambulance was called.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 42.

43.     At or about 4:40 p.m., an ambulance was finally on the grounds. Emergency medical staff transported Mr. Earvin to Culbertson Memorial Hospital via ambulance.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 43.

44.     Reports by the Defendant Officers involved, including without limitation Defendants Hedden and Banta, falsely indicate that Mr. Earvin was turned over to staff in segregation "without further incident."

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 44.

### Mr. Earvin's Physical Injuries

45.     Once Mr. Earvin arrived at Culbertson at approximately 5:37 p.m., medical staff there immediately recognized they were ill-equipped to handle Mr. Earvin's grave condition and he was airlifted via helicopter to St. John's Hospital in Springfield, Illinois. Prior to being airlifted, he was intubated.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 45.

46.     Mr. Earvin was received at St. John's at approximately 8:20 p.m. Once there, he was diagnosed with approximately 15 rib fractures, multiple abrasions, lacerations, and hemorrhages, and severe neurological and internal injuries. By the morning of May 18, he was intubated and on full ventilator support with no neurological response or corneal reflex. He was diagnosed with a large left frontal hematoma to his head. He had undergone surgery due to low blood pressure and bleeding out. He was diagnosed with an intercostal artery bleed and a mesenteric bleed secondary to assault. He had surgery to remove a portion of his bowel, leading to an ileostomy bag being placed for waste removal. His blood loss was severe and he required rapid blood transfusion during his surgical procedures. In short, his condition was critical from the beating he had sustained less than 24 hours earlier, and he was at death's door.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the

allegations contained in paragraph 46.

47. In addition to the foregoing, as a result of the chest trauma he sustained from the altercation, Mr. Earvin had pneumonia, a tracheostomy tube, and a chest tube to drain fluids.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 47.

48. As a direct result of Defendants' misconduct, Mr. Earvin experienced unnecessary pain and suffering. He succumbed to his injuries and died on June 26, 2018.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 48.

49. Following his death, the pathologist who conducted Mr. Earvin's autopsy concluded that Mr. Earvin died of blunt trauma to the chest and abdomen. His manner of death was ruled a homicide.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 49.

50. As a direct result of Defendants' misconduct, Plaintiff Pippion suffered injury, including without limitation extreme pain and suffering caused by the untimely death of his father, Mr. Earvin.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 50.

**Violence Against Prisoners By Staff At Western Illinois Correctional Center Was Pervasive And Well-Known**

51. The attack on Mr. Earvin was not an isolated incident at Western Illinois as unjustified violence against prisoners at the facility is a common occurrence.

**ANSWER:** Defendant admits that there have been other incidents of violence at Western

Illinois, but lacks sufficient information or knowledge to admit or deny the remaining allegations contained in paragraph 51.

52.     It was common knowledge amongst medical staff, correctional staff, and supervisory personnel that correctional officers were routinely taking inmates to holding cells in segregation and beating them in these locations due to the absence of cameras.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 52.

53.     Despite this widespread culture of violence, Defendants Watson and Snyder failed to take any meaningful action to prevent prisoners like Mr. Earvin from being harmed by officers charged with protecting them.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 53.

54.     IDOC policy requires officers who use force to write reports documenting the circumstances surrounding that use of force. On information and belief, Defendants Watson and Snyder reviewed these reports as well as grievances that may have been written complaining about prior instances of excessive force.

**ANSWER:** Defendant admits IDOC policy, at the relevant time, required correctional officers who use force to submit an incident report.  Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 54.

55.     Despite their awareness of the issue, Defendants Watson and Snyder failed to provide adequate supervision, discipline or training, or take any action to prevent repeated instances of excessive force by their co-Defendants.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the

allegations contained in paragraph 55.

**COUNT I - 42 U.S.C. §1983 - Excessive Force Constituting Cruel and Unusual Punishment (Eighth Amendment Claim Against Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges)**

56.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

57.     As set forth above, the Defendant Officers intentionally used force against Mr. Earvin, causing his death. Their use of force was unreasonable in light of the facts and circumstances present at the time that the force was used.

**ANSWER:** Defendant denies he used force against Mr. Earvin or caused his death. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 57.

58.     In using force against Mr. Earvin, the Defendant Officers intentionally used excessive cruelty toward him for the very purpose of causing harm, and not in a good faith effort to maintain or restore security or discipline.

**ANSWER:** Defendant denies he used force or excessive cruelty against Mr. Earvin, and further denies that he caused him any harm. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 58.

59.     In the alternative, the Defendant Officers knew that using force presented a risk of harm to Mr. Earvin, but recklessly disregarded that risk and Mr. Earvin's safety by failing to take reasonable measures to minimize that risk of harm.

**ANSWER:** Defendant denies he used force against Mr. Earvin or that he recklessly

disregarded any risk of harm to him. Defendant further denies that he was able to take reasonable measures to minimize the risk of harm. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 59.

60.     As a result of the unjustified and unconstitutional conduct of these Defendants, Mr. Earvin sustained damages including pain, suffering, emotional distress, injury, and death.

**ANSWER:** Defendant denies he engaged in any unjustified or unconstitutional conduct against Mr. Earvin. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 60.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny whether Plaintiff is entitled to the requested relief.

**COUNT II - 42 U.S.C. §1983 - Failure to Intervene**
**(Eighth Amendment Claim Against Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Watson, and Snyder)**

61.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

62.     As set forth above, all of the Defendants had a reasonable opportunity to prevent the violation of Mr. Earvin's constitutional rights, but they failed to do so.

**ANSWER:** Defendant denies that he had a reasonable opportunity to prevent a violation

18

of Mr. Earvin's constitutional rights. Defendant lacks sufficient knowledge and information to admit or deny the remaining allegations contained in paragraph 62.

63.     Defendants knew and were aware of a substantial risk of harm to Mr. Earvin's safety, but consciously disregarded that risk by failing to take reasonable steps to prevent the harm from occurring.

**ANSWER:** Defendant denies the allegations contained in this paragraph.

64.     Defendants' failures to act were intentional, done with malice, and/or done with deliberate indifference to Mr. Earvin's rights.

**ANSWER:** Defendant denies the allegations contained in paragraph 64.

65.     Due to the Defendants' unconstitutional failure to intervene, Mr. Earvin sustained damages including pain, suffering, emotional distress, injury, and death.

**ANSWER:** Defendant denies that he had a realistic opportunity to intervene. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 65.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** Defendant denies plaintiff is entitled to any relief under this count.

### COUNT III - 42 U.S.C. §1983 - Failure to Protect (Eighth Amendment Claim Against Watson and Snyder)

66.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

67.     Mr. Earvin's injuries were proximately caused by the policies and practices of Defendants Watson and Snyder.

**ANSWER:** As Count III and the allegations in paragraph 67 are not directed to Defendant, no response is required.

68.     At all relevant times, the Defendants had an affirmative duty to take reasonable steps to ensure Mr. Earvin's well-being and safety given that Mr. Earvin was in government custody.

**ANSWER:** As Count III and the allegations in paragraph 68 are not directed to Defendant, no response is required.

69.     Defendants knew that Mr. Earvin and other inmates faced a substantial risk of serious harm from officers in their employ, including the Defendant officers involved in brutally beating Mr. Earvin to death, and failed to take reasonable measures to abate said risk.

**ANSWER:** As Count III and the allegations in paragraph 69 are not directed to Defendant, no response is required.

70.     On information and belief, prior to May 2018, Defendants Watson and Snyder knew that correctional staff at Western Illinois, including without limitation Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges were routinely using excessive force against prisoners housed there. This routine use of excessive force was widespread and pervasive. Despite knowledge of this unconstitutional use of force, Defendants Watson and Snyder failed to adequately supervise, discipline, or train correctional staff, or take any other reasonable measures to prevent officers like Defendants Hedden, Burnett, Haubrich, Banta,

Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges from using excessive force against Mr. Earvin.

**ANSWER:** Defendant denies he routinely used excessive force against prisoners. Defendant denies he used force against Larry Earvin. As Count III and the remaining allegations in paragraph 70 are not directed to Defendant, no response is required.

71.     At all times relevant to their involvement in this case, Defendants Watson and Snyder were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding use of force at Western Illinois; the training of correctional staff at Western Illinois on use of force; and the supervision and discipline of correctional staff at Western Illinois.

**ANSWER:** As Count III and the allegations in paragraph 71 are not directed to Defendant, no response is required.

72.     The widespread use of excessive force at Western Illinois as described above, so pervasive as to constitute a de facto policy or practice, was able to exist and flourish because Defendants Watson and Snyder were deliberately indifferent to the problem, thereby ratifying it.

**ANSWER:** As Count III and the allegations in paragraph 72 are not directed to Defendant, no response is required.

73.     Mr. Earvin's injuries were caused by employees of IDOC, including without limitation Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki,

and Huges, who acted pursuant to the de facto policies described above at Western Illinois, which were ratified by Watson and Snyder.

**ANSWER:** Defendant denies he caused Larry Earvin's injuries. As Count III and the remaining allegations in paragraph 73 are not directed to Defendant, no response is required.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** As Count III and the allegations in this paragraph are not directed to Defendant, no response is required.

**COUNT IV - 42 U.S.C. §1983 -Deliberate Indifference to Serious Medical Need (Eighth Amendment claim against Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Lindsey, Duesenberg, Smith, Hill, Conley, Session, Durell, Watson, Eichelberger, and Hubbard)**

74.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

75.     At all relevant times, Mr. Earvin was an inmate in the custody of the IDOC and was subject to the Defendants' care and medical services.

A**NSWER:** Defendant admits that Mr. Earvin was an inmate in the custody of IDOC, but denies that Defendant was responsible for providing medical services.

76.     Mr. Earvin had a clearly established right under the United States Constitution to be free from deliberate indifference to his known serious medical needs and to receive proper

and adequate medical care while incarcerated and under the custody and control of the Defendants.

**ANSWER:** Defendant denies there is a constitutional right to receive proper and adequate medical care while incarcerated. Defendant admits that there is a clearly established right under the United States Constitution to be free from deliberate indifference to known serious medical needs, but deny that this is a full and complete statement of the law.

77.     Each Defendant knew or should have known of this clearly established right at the time of the incident that led to Mr. Earvin's death.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 77.

78.     Subsequent to the beating inflicted on him by correctional staff, Mr. Earvin was suffering from an objectively serious medical condition in that he had several fractured ribs and various severe neurological and internal injuries, in addition to various bruises, abrasions, and lacerations. His condition was grave.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 78.

79.     By virtue of either participating in or being present for the beating of Mr. Earvin, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges were aware that he had suffered serious injuries and had an objectively serious medical need, yet failed to secure the necessary emergency lifesaving medical treatment he required and/or obstructed or interfered with his access to the requisite medical care.

**ANSWER:** Defendant denies he participated in the beating of Mr. Earvin. Defendant denies that he was aware that Mr. Earvin was in need of emergency lifesaving medical treatment. Defendant denies that he obstructed or interfered with Mr. Earvin's access to medical care. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 79.

80.     Defendants Lindsey, Duesenberg, Smith, Hill, Conley, Session, Durell, Watson, Eichelberger, Hubbard, Shipman, and Wohlfiel all had contact with Mr. Earvin subsequent to the beating, observed signs of his deteriorating and critical condition and his serious medical need, yet failed to secure the necessary emergency lifesaving medical treatment he required in a timely manner and/or obstructed or interfered with his access to the requisite medical care.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in paragraph 80.

81.     At all times relevant to the allegations in this Complaint, each Defendant knew of and disregarded the excessive risks associated with Mr. Earvin's serious and life-threatening medical condition.

**ANSWER:** Defendant denies the allegations contained in paragraph 81.

82.     With deliberate indifference to Mr. Earvin's constitutional right to adequate medical care, the Defendants knowingly failed to adequately examine, treat, and/or care for Mr. Earvin's worsening condition. They did so despite their knowledge of Mr. Earvin's serious medical needs, thereby placing him at risk of serious physical harm, including death. Therefore, the Defendants knew or were aware that Mr. Earvin faced a substantial risk of harm and disregarded this risk by failing to take adequate measures to reduce the risk.

**ANSWER:** Defendant denies the allegations contained in paragraph 82.

83.     The acts or omissions of each Defendant were the legal and proximate cause of Mr.Earvin's death.

**ANSWER:** Defendant denies the allegations contained in paragraph 83.

84.     The acts and omissions of each Defendant caused Mr. Earvin damages in that he suffered extreme physical and mental pain while in the Defendants' custody.

**ANSWER:** Defendant denies the allegations contained in paragraph 84.

85.     The intentional actions or inactions of each Defendant as described herein constituted the unnecessary and wanton infliction of pain upon Mr. Earvin, thereby violating the Eighth Amendment.

**ANSWER:** Defendant denies the allegations contained in paragraph 85.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** Defendant denies Plaintiff is entitled to any relief under this count.

### COUNT V - 42 U.S.C. §1983 - Conspiracy (All Defendants)

86.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

87.     Defendants reached an agreement among themselves to deprive Mr. Earvin of his constitutional rights and to protect each other from liability for depriving Mr. Earvin of his rights, as described above.

**ANSWER:** Defendant denies the allegations contained in paragraph 87.

88.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**ANSWER:** Defendant denies the allegations contained in paragraph 88.

89.     The misconduct described herein was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Earvin's rights.

**ANSWER:** Defendant denies the allegations contained in paragraph 89.

90.     As a direct and proximate result of the illicit prior agreement as set forth above, Mr.Earvin's rights were violated and he sustained damages including pain, suffering, emotional distress, injury, and death.

**ANSWER:** Defendant denies the allegations contained in paragraph 90.

91.     Mr. Earvin's injuries were caused by employees of IDOC who acted pursuant to the de facto policies described above at Western Illinois, which were ratified by Watson and Snyder.

**ANSWER:** Defendant denies he caused Mr. Ervin's injuries. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 91.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** Defendant denies Plaintiff is entitled to any relief under this count.

**COUNT VI - State Law Claim - Intentional Infliction of Emotional Distress (Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, and Banta)**

92. All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

93. As set forth above, by beating Mr. Earvin to death without legal justification , the Defendant Officers abused their power and engaged in extreme and outrageous conduct.

**ANSWER:** As Count VI and the allegations in paragraph 93 are not directed to Defendant, no response is required.

94. The Defendants Officers' actions as set forth above were done intentionally or with the knowledge that there was a strong likelihood that the conduct would inflict severe emotional distress and with reckless disregard of that likelihood.

**ANSWER:** As Count VI and the allegations in paragraph 94 are not directed to Defendant, no response is required.

95. The Defendants Officers' actions as set forth above were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Earvin's rights.

**ANSWER:** As Count VI and the allegations in paragraph 95 are not directed to Defendant, no response is required.

96. As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including severe emotional distress and great conscious pain and suffering before his death.

**ANSWER:** As Count VI and the allegations in paragraph 96 are not directed to Defendant, no response is required.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants

awarding compensatory damages, punitive damages, attorney's fees and costs,

and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** As Count VI and the allegations in this paragraph are not directed to

Defendant, no response is required.

**COUNT VII - State Law Claim - Battery**
**(Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, and Banta)**

97.     All of the prior paragraphs are incorporated by reference as though fully set forth

herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

98.     As set forth above, the Defendant Officers intentionally made physical contact

with Mr. Earvin without just cause. This physical contact was offensive and harmful.

**ANSWER:** As Count VII and the allegations in paragraph 98 are not directed to

Defendant, no response is required.

99.     The actions of the Defendant Officers were intentional, willful, and wanton.

**ANSWER:** As Count VII and the allegations in paragraph 99 are not directed to

Defendant, no response is required.

100.    The misconduct set forth herein was undertaken with intentional disregard of Mr.

Earvin' s rights.

**ANSWER:** As Count VII and the allegations in paragraph 100 are not directed to

Defendant, no response is required.

101.    As a direct and proximate result of the Defendant Officers' misconduct, Mr.

Earvin sustained damages including great conscious pain and suffering before his death.

**ANSWER:** As Count VII and the allegations in paragraph 101 are not directed to Defendant, no response is required.

WHEREFORE , Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney' s fees and costs, and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** As Count VII and the allegations in this paragraph are not directed to Defendant, no response is required.

### COUNT VIII - State Law Claim -Negligent or Willful and Wanton Conduct
### (Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, Banta, Watson, and Snyder)

102.    All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

103.    As set forth above, the actions of the Defendants breached their duty of care to the prisoners in their custody by using excessive force against Mr. Earvin and/or failing to intervene to prevent the use of excessive force against him.

**ANSWER:** As Count VIII and the allegations in paragraph 103 are not directed to Defendant, no response is required.

104.    In the alternative, the actions of the Defendants were willful and wanton in that they demonstrated complete indifference to the safety of others. Defendants were aware that an injury would likely result from their acts or failures to act and recklessly disregarded the consequences of those acts or failures to act.

**ANSWER:** As Count VIII and the allegations in paragraph 104 are not directed to

29

Defendant, no response is required.

105.    The misconduct set forth herein was undertaken with intentional disregard of Mr. Earvin' s rights.

**ANSWER:** As Count VIII and the allegations in paragraph 105 are not directed to Defendant, no response is required.

106.    As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including great conscious pain and suffering before his death.

**ANSWER:** As Count VIII and the allegations in paragraph 106 are not directed to Defendant, no response is required.

WHEREFORE , Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** As Count VIII and the allegations in this paragraph are not directed to Defendant, no response is required.

### COUNT IX - State Law Wrongful Death Claim - Battery (Against Defendants Hedden, Burnett, Haubrich, and Banta)

107.    All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

108.    As set forth above, the Defendant Officers intentionally made physical contact with Mr. Earvin without just cause. This physical contact was offensive and harmful.

**ANSWER:** As Count IX and the allegations in paragraph 108 are not directed to Defendant, no response is required.

109. The actions of the Defendant Officers were intentional, willful, and wanton.

**ANSWER:** As Count IX and the allegations in paragraph 109 are not directed to Defendant, no response is required.

110. The misconduct set forth herein was undertaken with intentional disregard of Mr. Earvin' s rights.

**ANSWER:** As Count IX and the allegations in paragraph 110 are not directed to Defendant, no response is required.

111. As a direct and proximate result of the Defendant Officers' misconduct , Mr. Earvin sustained damages including death.

**ANSWER:** As Count IX and the allegations in paragraph 111 are not directed to Defendant, no response is required.

112. Plaintiff Larry Pippion claims damages for the wrongful death of Mr. Earvin, and for his loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as for his mental anguish caused by this loss, and for burial and other expenses and damages pursuant to the Illinois Wrongful Death Act.

**ANSWER:** As Count IX and the allegations in paragraph 112 are not directed to Defendant, no response is required.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** As Count IX and the allegations in this paragraph are not directed to Defendant, no response is required.

### COUNT X- State Law Wrongful Death Claim - Negligent or Willful and Wanton Conduct
### (Against Defendants Hedden, Burnett, Haubrich, and Banta)

113.    All of the prior paragraphs are incorporated by reference as though fully set forth herein.

**ANSWER:** Defendant incorporates his responses to all prior paragraphs.

114.    As set forth above, the actions of the Defendants breached their duty of care to the prisoners in their custody by using excessive force against Mr. Earvin and/or failing to intervene to prevent the use of excessive force against him.

**ANSWER:** As Count X and the allegations in paragraph 114 are not directed to Defendant, no response is required.

115.    In the alternative, the actions of the Defendants were willful and wanton in that they demonstrated complete indifference to the safety of others. Defendants were aware that an injury would likely result from their acts or failures to act and recklessly disregarded the consequences of those acts or failures to act.

**ANSWER:** As Count X and the allegations in paragraph 115 are not directed to Defendant, no response is required.

116.    As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including death.

**ANSWER:** As Count X and the allegations in paragraph 116 are not directed to Defendant, no response is required.

117.    Plaintiff Larry Pippion claims damages for the wrongful death of Mr. Earvin, and for his loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as for his mental anguish caused by this loss, and for burial and other expenses and damages pursuant to the Illinois Wrongful Death Act.

**ANSWER:** As Count X and the allegations in paragraph 117 are not directed to Defendant, no response is required.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

**ANSWER:** As Count X and the allegations in this paragraph are not directed to Defendant, no response is required.

### Count XI - Indemnification

**ANSWER:** Count XI was dismissed by the Court.

### JURY DEMAND

Defendant demands a trial by jury in this matter.

### AFFIRMATIVE DEFENSES

**A. Sovereign Immunity**

Plaintiff's claims for monetary damages against Defendant in his official capacities is precluded by the Eleventh Amendment, which bars an action for damages in federal court against a State or a State official sued in his official capacity. Plaintiff's claims under state law are barred by sovereign immunity and the State Lawsuit Immunity Act.

**B. Qualified Immunity**

At all times relevant herein, Defendant acted in good faith in the performance of his official duties and without violating Mr. Earvin's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendant is, therefore, protected from suit by the doctrine of qualified immunity.

WHEREFORE, for the above and foregoing reasons, Defendant respectfully request this Honorable Court deny Plaintiff any relief in this matter whatsoever and enter judgment in his favor.

Dated: July 20, 2020

Respectfully submitted,

Kwame Raoul
Attorney General
State of Illinois
*Counsel for Defendant,*
DEREK HASTEN

By:     *s/    Alan Remy Taborga*
       Alan Remy Taborga
       Assistant Attorney General
       Office of the Illinois Attorney General
       1776 East Washington Street
       Urbana, Illinois 61802
       Phone: (217) 278-3332
       E-Mail: ATaborga@atg.state.il.us

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 20, 2020, I electronically filed the foregoing, *Defendants'*

*Answer and Affirmative Defenses to Plaintiff's Complaint*, with the Clerk of Court using the

CM/ECF system, which will send notification of such filing to the following participants:

Jon F. Erickson
Ronak P. Maisuria
Michael Oppenheimer
ERICKSON & OPPENHEIMER LTD
jon@eolawus.com
ronak@eolawus.com
michael@eolawus.com

Theresa M. Powell
HEYL ROYSTER VOELKER & ALLEN
tpowell@heylroyster.com

Richard D. Frazier
CHERRY FRAZIER & SABIN LLP
frazier@springfieldlawfirm.com

Stanley N. Wasser
Howard W. Feldman
FELDMAN WASSER
swasser@feldman-wasser.com
hfeldman@feldman-wasser.com

Respectfully submitted,

By:    s/    *Alan Remy Taborga*
       Alan Remy Taborga
       Assistant Attorney General
       Office of the Illinois Attorney General
       1776 East Washington Street
       Urbana, Illinois 61802
       Phone: (217) 278-3332
       E-Mail: ATaborga@atg.state.il.us