E-FILED
Monday, 03 August, 2020  04:34:32 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

LARRY PIPPION, as Representative of )
the Estate of Larry Earvin, )
)
     Plaintiff, )
)
  -vs- )    No. 19-3010-SEM
)
SGT. WILLIE HEDDEN, LT. BENJAMIN )
BURNETT, LT. BLAKE HAUBRICH, )
C/O ALEX BANTA, WARDEN )    **JURY TRIAL DEMANDED**
CAMERON WATSON, ASST. WARDEN )
STEVE SNYDER, Individually, et al., )
)
    Defendants. )

## DEFENDANTS HENDRICKS, VOLK, WATERSTRAAT, CONLEY, CRARY, FISHEL, LENNING, AND LINDSEY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COME the Defendants, Brett Hendricks, Shawn Volk, Richard Waterstraat, Shawn Conley, Philip Crary, Robert Fishel, Daniel Lenning, and Matthew Lindsey, by and through their attorney, Kwame Raoul, Attorney General of the State of Illinois, and for their Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, state as follows:

### NATURE OF THE CASE

This is an action seeking remedies for the deprivation of Larry Earvin's constitutionally protected rights resulting in his death while in the custody of the Illinois Department of Corrections (hereinafter "IDOC").

ANSWER: Defendants admit plaintiff has described the nature of this action, but deny he is entitled to any relief in this matter.

## PARTIES

1.      Larry Earvin, the decedent, was a 65-year-old prisoner housed at Western Illinois Correctional Center. He died on June 26, 2018 as a result of a violent physical attack upon him by some of the Defendants that occurred on or about May 17, 2018.

ANSWER: Defendants admit Larry Earvin was formerly housed at Western Illinois Correctional Center and that he died on June 26, 2018. Defendants deny any claim they attacked Plaintiff at any time. Defendants lack sufficient knowledge or information to form a belief about the cause of Mr. Earvin's death.

Defendants Conley, Crary, Fishel, and Lenning deny seeing any Defendants attack Plaintiff at any time, but lack sufficient knowledge or information to form a belief about the remaining allegations contained in this paragraph.

Defendant Volk admits that one of the Defendants did engage in a physical attack on Mr. Earvin on May 17, 2018, but lacks knowledge or information sufficient to form a belief as to whether this attack was "violent." Defendant Volk lacks knowledge or information sufficient to form a belief as to whether additional Defendants attacked Mr. Earvin on May 17, 2018.

Defendant Waterstraat admits that one of the Defendants did engage in a violent physical attack on Mr. Earvin on May 17, 2018. Defendant Waterstraat lacks knowledge or information sufficient to form a belief as to whether additional Defendants attacked Mr. Earvin on May 17, 2018.

Defendants Hendricks and Lindsey admit that one of the Defendants did engage in a violent physical attack on Mr. Earvin on May 17, 2018. Defendants Hendricks and Lindsey lack knowledge or information sufficient to form a belief as to whether additional Defendants attacked Mr. Earvin on May 17, 2018.

2.    At the time of the incident, Mr. Earvin was incarcerated at Western Illinois Correctional Center in Mount Sterling, Illinois. He was imprisoned in 2015 for robbery/theft, and he was scheduled to be released from custody in September 2018.

ANSWER: Defendants admit the allegations in paragraph 2.

3.    Plaintiff, Larry Pippion, is the son of the decedent and has been appointed Representative of Mr. Earvin's estate.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

4.    At all relevant times, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Lindsey, Session, Durell, Eichelberger, Shipman, and Wohlfiel were law enforcement officers employed by the IDOC as correctional staff at the Western Illinois Correctional Center where Mr. Earvin was incarcerated. At all relevant times, these Defendant Officers were acting within the scope of their employment and under color of law. They are sued in their individual capacities.

ANSWER: Defendants admit Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Hughes, Lindsey, Session, Durell, Eichelberger, Shipman, and Wohlfiel were employed as security staff at Western Illinois Correctional Center. Defendants lack sufficient knowledge or information to form a belief about whether Hedden, Haubrich, Banta, or Sheffler were, at all relevant times, acting within the scope of their employment and under color of law. Defendants admit that Burnett, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens,

Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Hughes, Lindsey, Session, Durell, Eichelberger, Shipman, and Wohlfiel were acting within the scope of their employment and under color of law. Defendants admit that the people identified in this paragraph are being sued in their individual capacities.

5.   At all relevant times, Defendant Cameron Watson was the Warden at the Western Illinois Correctional Center and an employee of the IDOC. Defendant Watson was responsible for the implementation, oversight, and supervision of policies and practices at Western Illinois, and the oversight and discipline of staff there. At all relevant times, Defendant Watson was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

ANSWER: Defendants admit that Defendant Watson was, in part, responsible for the implementation, oversight, and supervision of policies and practices at Western Illinois, and the oversight and discipline of staff there, but deny that he was the sole person with those responsibilities. Defendants also deny paragraph 5 contains a complete and accurate statement of defendant Watson's duties. Defendants admit the remaining allegations contained in this paragraph.

6.   On information and belief, at all relevant times, Defendant Steve Snyder was the Assistant Warden of Operations at Western Illinois and an employee of the IDOC. Defendant Snyder was responsible for the implementation, oversight, and supervision of policies and practices at Western Illinois, and the oversight and discipline of staff there. At all relevant times, Defendant Snyder was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

ANSWER: Defendants admit that Defendant Snyder was, in part, responsible for the implementation, oversight, and supervision of policies and practices at Western Illinois, and the oversight and discipline of staff there, but deny that he was the only person who had such

responsibilities. Defendants deny paragraph 6 contains a complete and accurate statement of defendant Snyder's duties. Defendants admit the remaining allegations contained in this paragraph.

7.     At all relevant times, Defendants Duesenberg, Whitaker, Smith, Hill, and Conley (hereinafter "Medical Staff Defendants") worked at Western Illinois Correctional Center as part of the medical staff. At all relevant times, the Medical Staff Defendants were acting under color of law and within the scope of their employment. They are sued in their individual capacities.

ANSWER: Defendants deny that Conley and Hill were medical staff at Western Correctional Center. Defendants admit Whitaker and Smith were medical staff at Western Illinois Correctional Center. Defendants lack sufficient knowledge or information to form a belief about the remaining allegations contained in paragraph 7.

### JURISDICTION AND VENUE

8.     This case includes claims for relief under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1331 and 1367.

ANSWER: Defendants deny the Court has jurisdiction over plaintiff's claims based on state law.  Defendants admit jurisdiction is otherwise proper. Defendants admit Plaintiff claims relief under 42 U.S.C. § 1983 but deny Plaintiff is entitled to relief.

9.     Venue is proper under 28 U.S.C. § 1391(b).

ANSWER: Defendants admit the allegations contained in this paragraph.

### FACTUAL ALLEGATIONS

#### The Initial Physical Encounter Between Correctional Staff and Mr. Earvin

10.     On or about May 17, 2018, at or about 1:10 p.m., Defendant Syrcle verbally engaged with Mr. Earvin. This encounter caused Defendant Syrcle to call for Defendant Burnett.

ANSWER: Defendants admit that Syrcle and Larry Earvin interacted on May 17, 2018 at

or about 1:10 p.m. Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

11.     At or about 1:20 p.m., Defendant Burnett entered the wing where Mr. Earvin and Defendant Syrcle were.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations in paragraph 11.

12.     At or about 1:23 p.m., Defendants Snell, Burnett, and Syrcle engaged in a physical altercation with Mr. Earvin.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations in paragraph 12.

13.     During the foregoing altercation, without just cause or provocation, Defendant Burnett pepper sprayed Mr. Earvin.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

14.     Lt. Burnett then called a Code 1 (Staff in Distress), to which various Defendants, including without limitation Defendants Hedden, Hendricks, Banta, and Sheffler, responded.

ANSWER: Defendants admit Lt. Burnett called a Code 1 (Staff in Distress) and that various defendants responded, including Hedden, Hendricks, Banta, and Sheffler.

15.     Defendants Burnett, Snell, and Syrcle handcuffed Mr. Earvin behind his back.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

16.    At or about 1:25 p.m., Mr. Earvin was then dragged to segregation by various Defendant Officers, including without limitation Defendants Hedden, Hendricks, Banta, and Sheffler.

ANSWER: Defendants Hendricks, Volk, Conley, Crary, Fishel, and Lenning admit that Larry Earvin was taken to segregation by various Defendant Officers, including Hedden, Hendricks, Banta, and Sheffler. Defendants Hendricks, Volk, Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief regarding the time that Mr. Earvin was taken to segregation.

Defendant Volk and Hendricks deny that Larry Earvin was "dragged" to segregation.

Defendants Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about whether Mr. Earvin was "dragged" to segregation.

Defendants Waterstraat and Lindsey lack sufficient knowledge or information to form a belief about the allegations in this paragraph.

17.    Once in the segregation area at or about 1:30 p.m. and with knowledge that this was an area where there were no video cameras to capture what would occur, Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges either beat and viciously attacked Mr. Earvin while he was on the ground and handcuffed behind his back or observed this and failed to intervene despite having a reasonable opportunity to do so. The beating administered to Mr. Earvin includes without limitation the Defendants punching and kicking Mr. Earvin in his ribs repeatedly and striking him about the head.

ANSWER: Defendants Volk and Hendricks admit that they were in the segregation area at or around 1:30 p.m., but deny beating or viciously attacking Earvin in segregation. Defendants Volk and Hendricks admit they observed Alex Banta beat Mr. Earvin while he was on the ground

and handcuffed behind his back. Defendant Volk and Hendricks deny that they observed any Defendant other than Banta beat Mr. Earvin. Defendants Volk and Hendricks lack knowledge or information sufficient to form a belief about whether Defendant Banta "viciously" attacked Mr. Earvin. Defendant Volk and Hendricks deny that any other Defendants attacked Mr. Earvin in the segregation area. Defendants Volk and Hendricks admit that the beating administered to Mr. Earvin by Defendant Banta (but not any other Defendants) included punching. Defendants Volk and Hendricks deny that the beating administered to Mr. Earvin included kicking in the ribs or striking him about the head.

Defendant Volk denies that he or any other Defendant failed to intervene despite having a reasonable opportunity to do so.

Defendant Hendricks admits that he had a reasonable opportunity to intervene but did not do so. To the extent this paragraph alleges that Defendant Hendricks intentionally failed to intervene, that allegation is denied. Defendant Hendricks lacks knowledge or information sufficient to form a belief regarding whether any other Defendant officers could have intervened.

Defendant Lindsey admits that he was in the segregation area at or around 1:30 p.m. Defendant Lindsey admits he observed Alex Banta beat and viciously attack Mr. Earvin while he was on the ground and handcuffed behind his back. Defendant Lindsey denies that he observed any Defendants other than Banta beat or viciously attack Mr. Earvin. Defendant Lindsey denies that he failed to intervene despite having a reasonable opportunity to do so. Defendant Lindsey admits that some officers failed to intervene despite having a reasonable opportunity to do so, but lacks knowledge or information sufficient to form a belief about the specific identities of those individuals, including whether those officers are Defendant Officers. Defendant Lindsey admits that the beating administered to Mr. Earvin by Defendant Banta (but not any other Defendants)

included punching. Defendant Lindsey lacks knowledge or information sufficient to form a belief about whether the beating administered to Mr. Earvin included kicking in the ribs or striking him about the head.

Defendants Waterstraat, Conley, Crary, Fishel, and Lenning deny being in the segregation area at or around 1:30 p.m. Defendants Waterstraat, Conley, Crary, Fishel, and Lenning deny beating or attacking Mr. Earvin. Defendants Waterstraat, Conley, Crary, Fishel, and Lenning deny that they failed to intervene despite having a reasonable opportunity to do so. Defendants Waterstraat, Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about the remaining allegations in paragraph 17.

18. Witness statements indicate that up to 30-40 officers were involved and/or present as Mr. Earvin was beaten to the point that he would eventually succumb to his injuries and die weeks later.

ANSWER: Defendants admit there is one witness statement indicating there were 30-40 officers "involved." Defendants deny that there is more than one witness statement making this claim. Defendants admit that Larry Earvin died weeks after May 17, 2018. Defendants lack sufficient knowledge or information to form a belief about the remaining allegations contained in this paragraph.

19. As the beating was occurring, none of the Defendant Officers intervened in their fellow officers' use of force despite having a reasonable opportunity to do so.

ANSWER: Defendant Volk denies that he or any other Defendant officers failed to intervene in "the beating" despite having a reasonable opportunity to do so.

Defendant Hendricks admits that he did not intervene in Defendant Banta's use of force despite having a reasonable opportunity to do so. To the extent this paragraph alleges that

Defendant Hendricks intentionally failed to intervene, that allegation is denied. Defendant Hendricks lacks knowledge or information sufficient to form a belief about whether other Defendant Officers failed to intervene in the "beating" despite having a reasonable opportunity to do so.

Defendants Waterstraat, Conley, Crary, Fishel, and Lenning deny that they failed to intervene in "the beating" despite having a reasonable opportunity to do so. Defendants Waterstraat, Conley, Crary, Fishel, and Lenning were not present in segregation, and therefore were not present for "the beating," therefore Defendants Waterstraat, Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about whether other Defendant Officers failed to intervene in "the beating" despite having a reasonable opportunity to do so.

Defendant Lindsey denies that he failed to intervene in "the beating" despite having a reasonable opportunity to do so. Defendant Lindsey admits that none of the other officers present intervened in "the beating" despite having a reasonable opportunity to do so, but lacks knowledge or information sufficient to form a belief about who those officers were, including whether they were Defendant Officers.

20.    At or about 1:45 p.m., Defendant Nurse Duesenberg arrived at Mr. Earvin's cell and performed a medical assessment. Despite the obvious severity and nature of Mr. Earvin's extensive injuries which would have been immediately visible to her, Defendant Duesenberg failed to provide Mr. Earvin with adequate medical attention or procure him the necessary emergency medical attention, instead simply cleaning various abrasions, bandaging his bleeding head, and performing a vitals check. She noted only that his nose was running (presumably from the OC spray), he had cuts on his forehead, and that he had abrasions to his left shoulder, left knee, and left toe.

ANSWER: Defendants Hendricks, Volk, Waterstraat, Conley, Crary, and Lenning lack

sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

Defendant Fishel admits that Nurse Duesenberg performed a medical assessment of Mr. Earvin. Defendant Fishel lacks knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

Defendant Lindsey admits that, at or about 1:45 p.m., Nurse Duesenberg arrived to perform a medical assessment of Mr. Earvin, but denies Mr. Earvin was in a cell at this time. Defendant Lindsey lacks sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

21.    Defendant Duesenberg was aware from her assessment that Mr. Earvin had been seriously injured, including without limitation that he had sustained injuries that affected his ability to properly breathe.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

22.    Defendant Duesenberg falsified medical reports to indicate that Mr. Earvin had only minor injuries and did not complain of any pain other than his head/face area. Her report of her initial assessment indicates that Mr. Earvin was in "minimal distress" despite "facial grimacing and audible grunting present" and that he was "coached to breath[e] in through nose and out through mouth."

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

23.   Duesenberg's report indicates that the plan for treatment was to place Mr. Earvin on continuous watch, administer ibuprofen for pain, re-evaluation in the afternoon by the nurse on shift, and a "follow-up at final destination due to being transferred out tomorrow 5/18/18 per security."

ANSWER: Defendants admit that Duesenberg indicated in a report that the plan for treatment was to place Mr. Earvin on continuous watch, administer ibuprofen for pain, to be re-evaluated by the nurse, and "a follow-up at final destination due to being transferred out tomorrow 5/18/18 per security."

24.   Recognizing the severity of Mr. Earvin's injuries and not wanting to be subject to investigation or repercussions, as Mr. Earvin was slowly dying from his injuries, the Defendants had devised a plan to transfer Mr. Earvin in the morning to another facility.

ANSWER: Defendants deny paragraph 24.

25.   Defendant Lt. Lindsey was present for Duesenberg's initial medical assessment of Mr. Earvin and observed Mr. Earvin's extensive and obvious severe medical injuries, but did nothing to procure him the immediate emergency medical attention he required.

ANSWER: Defendants Hendricks, Volk, Waterstraat, Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

Defendant Lindsey admits he was present for Duesenberg's initial medical assessment of Mr. Earvin. Defendant Lindsey denies the remaining allegations in this paragraph.

26.   At or about 1:50 p.m., Defendant Watson and Deputy Director Eilers were notified of the altercation between staff and Mr. Earvin.

ANSWER: Defendants admit the allegations contained in this paragraph.

27.     While Mr. Earvin lay in a cell suffering from the injuries that would shortly
thereafter claim his life, medical staff treated the Defendants who viciously attacked him for the
various scratches they had received while beating him and administered tetanus shots to some of
the officer Defendants because they had been exposed to Mr. Earvin's blood while they beat him
to death

ANSWER: Defendant Volk admits that some of the Defendants were treated by medical

staff on May 17, 2018. Defendant Volk lacks knowledge or information sufficient to form a belief

about whether those being treated had viciously attacked Mr. Earvin, and lacks knowledge or

information sufficient to form a belief about the remaining allegations in this paragraph.

Defendant Hendricks admits that Defendant Banta attacked Mr. Earvin and was then

treated for injuries by medical staff, but lacks knowledge or information sufficient to form a belief

regarding what Banta's injuries were or what specific treatments he received. Defendant Hendricks

admits that medical staff treated him, but denies that he attacked Mr. Earvin. Defendant Hendricks

admits that other Defendant Officers besides Banta were treated by medical staff for injuries, but

lacks knowledge or information sufficient to form a belief regarding whether those Defendant

officers other than Banta attacked Mr. Earvin.

Defendants Waterstraat, Conley, Crary, Fishel, Lenning, and Lindsey lack sufficient

knowledge or information to form a belief about the allegations contained in this paragraph.

28.     At or about 2:15 p.m., Defendant Session had contact with Mr. Earvin in which he
observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing other than
photograph them.

ANSWER: Defendants admit Defendant Session had contact with Mr. Earvin around 2:15

p.m. on May 17, 2018. Defendants lack knowledge or information sufficient to form a belief about

the remaining allegations in paragraph 28.

29.    At or about 2:30 p.m., Defendant Conley placed Mr. Earvin under a crisis care watch due to "unusual behavior that [was] concerning and need for further observation." Despite observing Mr. Earvin's extensive and obvious serious medical injuries, Defendant Conley did nothing to obtain Mr. Earvin the immediate emergency medical attention he required.

ANSWER: Defendants admit that Earvin was placed on a crisis watch due to "unusual behavior that is concerning and need for further observation." Defendants deny that Defendant Conley was the person who placed Mr. Earvin on the crisis watch. Defendants lack sufficient knowledge or information to form a belief about the remaining allegations contained in this paragraph.

30.    At or about 3:00 p.m., Defendants Hubbard and Eichelberger moved Mr. Earvin from his segregation cage to cell Receiving 38 so he could be placed on "continuous watch" (where there was to be both verbal and visual line of sight monitoring continuously) at which time Mr. Earvin vomited on the Defendants and the floor. Despite observing Mr. Earvin's extensive and obvious serious medical injuries, these Defendants did nothing to obtain Mr. Earvin the necessary medical attention, instead simply going to complete workman's compensation packets in the event something adverse happened to them from their contact with Mr. Earvin's vomit.

ANSWER: Defendants deny that Hubbard is a Defendant. Defendants lack sufficient knowledge or information to form a belief about the remaining allegations contained in this paragraph.

31.    Defendant Hill initiated the continuous watch for Mr. Earvin.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

32. It was clear to Defendant Hill that Mr. Earvin's condition was critical and that he required immediate emergency medical attention. Rather than procuring him the necessary immediate emergency medical attention, she falsely noted in her medical paperwork as part of a conspiracy to possibly cover up Mr. Earvin's imminent death that there had been reports that Mr. Earvin was at risk for suicide and that he was acting strangely. She indicated that he was unable to answer questions and characterized his loss of consciousness as "falling asleep."

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

33. Defendants Duesenberg and Smith were made aware that Mr. Earvin was vomiting. At this point, having no choice but to expand the universe of individuals who would become aware of this incident, Smith discussed Mr. Earvin's condition with one of the doctors on call via telephone.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

34. Smith did not fully apprise the doctor on the phone of the reality of Mr. Earvin's condition, instead limiting the information provided to the fact that he was vomiting and minimizing the nature of his injuries. Due to this misinformation, the recommendation obtained was to transfer Mr. Earvin to the Health Care Unit's infirmary and conduct neurological checks.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

35. Had Smith told the truth regarding Mr. Earvin's obvious critical condition, the recommendation would have been to get him immediate emergency medical attention.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

36.     Despite being ordered to conduct neurological checks, none of the medical staff Defendants involved who were responsible for Mr. Earvin's care and his physical well-being appropriately did so. They prepared a form titled "Flow Sheet" in which they put together a neurological checklist of vitals to be taken and observations regarding Mr. Earvin's mental state, pupils muscle tone, and movements to be logged. The Defendants failed to log anything on the Flow Sheet because they recognized that Mr. Earvin's condition was grave and they did not want to leave a paper trail regarding their recognition of such and their abysmal failure to abide by their oaths when they ignored his condition and refused to obtain him the necessary medical care.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

37.     At or about 3:15 p.m. and then again approximately half an hour later, Defendant Durell had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

38.     Between about 3:00 p.m. when he was placed in Receiving 38 and the time he departed the facility via ambulance, Defendants Hill, Eichelberger, Shipman, and Wohlfiel had contact with Mr. Earvin in which as part of the continuous watch on which he had been placed, they observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

39.     At or about 3:59 p.m., Defendant Watson came to Receiving 38 and had contact with Mr. Earvin in which he observed Mr. Earvin's extensive and obvious serious medical injuries and did nothing to procure him the necessary emergency medical attention.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

40.     The gravity of the situation and the critical nature of Mr. Earvin's condition was obvious to those who had observed him.

ANSWER: Defendants deny the allegations contained in this paragraph.

41.     At or about 4:15 p.m., Defendants Durell, Eichelberger, and Duesenberg pushed Earvin in a wheelchair to the Health Care Unit and placed him in an isolation cell. During this transfer, he vomited again, and his head was bleeding. Despite observing his extensive and obvious serious medical injuries, none of these Defendants procured him the necessary emergency medical attention.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

42.     After the transfer to the Health Care Unit, Duesenberg telephoned the doctor and informed him that there was a change in Mr. Earvin's vitals – his oxygen levels were lower and he was having difficulty breathing. The doctor advised that Mr. Earvin should be sent to an outside hospital, and finally, over three hours after the vicious, violent attack by the Defendant Officers in which Mr. Earvin was beaten to the point where his injuries were visibly apparent and obviously severe to all who observed him in this time period, an ambulance was called.

ANSWER: Defendants admit an ambulance was called. Defendants deny that they violently attacked Earvin.

Defendants Hendricks, Volk, Waterstaat, Fishel, and Lindsey deny that Earvin's injuries

were visibly apparent and obviously severe to all who observed him. Defendants Hendricks, Volk, Waterstaat, Fishel, and Lindsey lack sufficient knowledge or information to form a belief about the remaining allegations contained in this paragraph.

Defendants Conley, Crary, and Lenning lack sufficient knowledge or information to form a belief about whether Mr. Earvin's injuries were visibly apparent and obviously severe to all who observed him. Defendants Conley, Crary, and Lenning lack sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

43.   At or about 4:40 p.m., an ambulance was finally on the grounds. Emergency medical staff transported Mr. Earvin to Culbertson Memorial Hospital via ambulance.

ANSWER: Defendants admit that Mr. Earvin was transported to Culbertson Memorial Hospital via ambulance. Defendants lack sufficient knowledge or information to form a belief about the remaining allegations contained in this paragraph.

44.   Reports by the Defendant Officers involved, including without limitation Defendants Hedden and Banta, falsely indicate that Mr. Earvin was turned over to staff in segregation "without further incident."

ANSWER: Defendants admit that Defendants Hedden and Banta completed reports in which they stated that Mr. Earvin was turned over to staff in segregation without further incident. Defendants deny that they wrote incident reports.

Defendant Hendricks denies his incident report falsely indicated that Mr. Earvin was turned over to segregation staff "without further incident."

Defendants Hendricks, Volk, and Lindsey admit that the incident reports written by Hedden and Banta were false in that they wrote Mr. Earvin was turned over to staff in segregation "without further incident."

Defendants Waterstraat, Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about whether Hedden and Banta's, or other Defendant Officers', incident reports falsely indicated that Mr. Earvin was turned over to staff in segregation "without further incident."

## Mr. Earvin's Physical Injuries

45.     Once Mr. Earvin arrived at Culbertson at approximately 5:37 p.m., medical staff there immediately recognized they were ill-equipped to handle Mr. Earvin's grave condition and he was airlifted via helicopter to St. John's Hospital in Springfield, Illinois. Prior to being airlifted, he was intubated.

ANSWER: Defendants admit that, after arrival at Culbertson Memorial Hospital, Mr. Earvin was airlifted to St. John's Hospital in Springfield. Defendants lack sufficient knowledge or information to form a belief about the remaining allegations contained in this paragraph.

46.     Mr. Earvin was received at St. John's at approximately 8:20 p.m. Once there, he was diagnosed with approximately 15 rib fractures, multiple abrasions, lacerations, and hemorrhages, and severe neurological and internal injuries. By the morning of May 18, he was intubated and on full ventilator support with no neurological response or corneal reflex. He was diagnosed with a large left frontal hematoma to his head. He had undergone surgery due to low blood pressure and bleeding out. He was diagnosed with an intercostal artery bleed and a mesenteric bleed secondary to assault. He had surgery to remove a portion of his bowel, leading to an ileostomy bag being placed for waste removal. His blood loss was severe and he required rapid blood transfusion during his surgical procedures. In short, his condition was critical from the beating he had sustained less than 24 hours earlier, and he was at death's door.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

47.     In addition to the foregoing, as a result of the chest trauma he sustained from the altercation, Mr. Earvin had pneumonia, a tracheostomy tube, and a chest tube to drain fluids.

ANSWER: Defendants lack sufficient knowledge or information to form a belief about the allegations contained in this paragraph.

48.     As a direct result of Defendants' misconduct, Mr. Earvin experienced unnecessary pain and suffering. He succumbed to his injuries and died on June 26, 2018.

ANSWER: Defendants deny that they engaged in any misconduct which caused pain and suffering to Mr. Earvin. Defendants admit that Mr. Earvin died on June 26, 2018.

Defendants Hendricks, Volk and Lindsey admit that as a direct result of Defendant Banta's misconduct, Mr. Earvin experienced unnecessary pain and suffering. Defendants Hendricks, Volk, and Lindsey lack sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

Defendant Waterstraat admits that as a direct result of Defendant Hedden's misconduct, Mr. Earvin experienced unnecessary pain and suffering. Defendant Waterstraat lacks sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

49.     Following his death, the pathologist who conducted Mr. Earvin's autopsy concluded that Mr. Earvin died of blunt trauma to the chest and abdomen. His manner of death was ruled a homicide.

**RESPONSE:** Defendants admit the allegations contained in paragraph 49.

50.     As a direct result of Defendants' misconduct, Plaintiff Pippion suffered injury, including without limitation extreme pain and suffering caused by the untimely death of his father, Mr. Earvin.

ANSWER: Defendants deny that they engaged in any misconduct and deny that Plaintiff

Pippion suffered injury due to their conduct. Defendants lack sufficient knowledge or information to form a belief about the remaining allegations contained in this paragraph.

### Violence Against Prisoners By Staff At Western Illinois Correctional Center Was Pervasive And Well-Known

51.     The attack on Mr. Earvin was not an isolated incident at Western Illinois as unjustified violence against prisoners at the facility is a common occurrence.

ANSWER: Defendants deny the allegations contained in this paragraph.

52.     It was common knowledge amongst medical staff, correctional staff, and supervisory personnel that correctional officers were routinely taking inmates to holding cells in segregation and beating them in these locations due to the absence of cameras.

ANSWER: Defendants deny the allegations contained in this paragraph.

53.     Despite this widespread culture of violence, Defendants Watson and Snyder failed to take any meaningful action to prevent prisoners like Mr. Earvin from being harmed by officers charged with protecting them.

ANSWER: Defendants deny the allegations contained in this paragraph.

54.     IDOC policy requires officers who use force to write reports documenting the circumstances surrounding that use of force. On information and belief, Defendants Watson and Snyder reviewed these reports as well as grievances that may have been written complaining about prior instances of excessive force.

ANSWER: Defendants admit IDOC policy requires officers who use force to submit incident reports.  Defendants admit Watson and Snyder review some incident reports and grievances related to use of force, but deny they see all such documents.

55.    Despite their awareness of the issue, Defendants Watson and Snyder failed to provide adequate supervision, discipline or training, or take any action to prevent repeated instances of excessive force by their co-Defendants.

ANSWER: Defendants deny the allegations contained in this paragraph.

**COUNT I – 42 U.S.C. §1983 – Excessive Force Constituting Cruel and Unusual Punishment (Eighth Amendment Claim Against Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges)**

56.    All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

57.    As set forth above, the Defendant Officers intentionally used force against Mr. Earvin, causing his death. Their use of force was unreasonable in light of the facts and circumstances present at the time that the force was used.

ANSWER: Defendants Hendricks, Conley, Crary, Fishel, Lenning, Volk, and Lindsey deny using any force against Mr. Earvin.

Defendants Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

Defendant Waterstraat admits that he used force against Mr. Earvin, but denies that his use of force was "as set forth above." Defendant Waterstraat denies that his use of force caused Mr. Earvin's death. Defendant Waterstraat denies that his use of force was unreasonable in light of the facts and circumstances at the time that the force was used. Defendant Waterstraat lacks sufficient knowledge or information to form a belief about whether the other Defendant Officers used force against Mr. Earvin "as set forth above" and therefore lacks sufficient knowledge or information to

form a belief about the remaining allegations in this paragraph.

Defendants Hendricks, Volk, and Lindsey lack sufficient knowledge or information to form a belief about whether any use of force caused Mr. Earvin's death. Defendants Hendricks, Volk, and Lindsey deny that the allegations "set forth above" are a complete and accurate description of the use of force against Mr. Earvin, but admit that Defendant Officer Banta intentionally used force against Mr. Earvin, and that the use of force was unreasonable in light of the facts and circumstances present at the time that the force was used.

58.    In using force against Mr. Earvin, the Defendant Officers intentionally used excessive cruelty toward him for the very purpose of causing harm, and not in a good faith effort to maintain or restore security or discipline.

ANSWER: Defendants Hendricks, Conley, Crary, Fishel, Lenning, Volk, and Lindsey deny using any force against Mr. Earvin.

Defendants Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

Defendants Hendricks, Volk, and Lindsey admit that Defendant Banta intentionally used force against Mr. Earvin and that the use of force was excessive and cruel towards Mr. Earvin for the very purpose of causing harm, and that the force was not in a good faith effort to maintain or restore security or discipline. Defendants Hendricks, Volk, and Lindsey lack sufficient knowledge or information to form a belief about whether any other Defendant officers (besides Banta) intentionally used excessive cruelty toward Mr. Earvin for the very purpose of causing harm, and not in a good faith effort to maintain or restore security or discipline.

Defendant Waterstraat admits that he used force against Mr. Earvin. Defendant Waterstraat denies that he intentionally used excessive cruelty toward Mr. Earvin for the very purpose of

causing harm, and further denies that his use of force was not a good faith effort to maintain or restore security or discipline. Defendant Watersraat admits that Defendant Hedden used force against Mr. Earvin, and that the use of force was intentionally excessive and cruel towards Mr. Earvin for the very purpose of causing harm and not in a good faith effort to maintain or restore security or discipline. Defendant Waterstraat lacks sufficient knowledge or information to form a belief regarding whether any other Defendant officers (besides Hedden) intentionally used excessive cruelty toward Mr. Earvin for the very purpose of causing harm, and not in a good faith effort to maintain or restore security or discipline.

59.    In the alternative, the Defendant Officers knew that using force presented a risk of harm to Mr. Earvin, but recklessly disregarded that risk and Mr. Earvin's safety by failing to take reasonable measures to minimize that risk of harm.

ANSWER: Defendants deny the allegations contained in this paragraph.

60.    As a result of the unjustified and unconstitutional conduct of these Defendants, Mr. Earvin sustained damages including pain, suffering, emotional distress, injury, and death.

ANSWER: Defendants deny that they engaged in unjustified or unconstitutional conduct that caused damages to Mr. Earvin.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

Defendants Hendricks, Lindsey and Volk admit that Banta engaged in unjustified conduct that caused Mr. Earvin pain, suffering, and injury. Defendants Hendricks, Volk and Lindsey lack sufficient knowledge or information to form a belief about whether this conduct was unconstitutional. Defendants Hendricks, Volk and Lindsey lack sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

Defendant Waterstraat admits that Hedden engaged in unjustified conduct that caused Mr. Earvin pain, suffering, and injury. Defendant Waterstraat lacks sufficient knowledge or information to form a belief about whether this conduct was unconstitutional. Defendant Waterstraat lacks sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to any relief as to them.

**COUNT II – 42 U.S.C. §1983 – Failure to Intervene**
**(Eighth Amendment Claim Against Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Watson, and Snyder)**

61.    All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

62.    As set forth above, all of the Defendants had a reasonable opportunity to prevent the violation of Mr. Earvin's constitutional rights, but they failed to do so.

ANSWER: Defendants deny the allegations in this paragraph.

63.    Defendants knew and were aware of a substantial risk of harm to Mr. Earvin's safety, but consciously disregarded that risk by failing to take reasonable steps to prevent the harm from occurring.

ANSWER: Defendants deny that they knew or were aware of a substantial risk of harm to

Mr. Earvin's safety, deny consciously disregarding the alleged risk, and deny failing to take reasonable steps to prevent the alleged harm from happening. Defendants lack sufficient knowledge or information to form a belief about whether any other Defendants knew or were aware of a substantial risk of harm to Mr. Earvin's safety but consciously disregarded that risk by failing to take reasonable steps to prevent the harm.

64.    Defendants' failures to act were intentional, done with malice, and/or done with deliberate indifference to Mr. Earvin's rights.

ANSWER: Defendants deny that they intentionally failed to act, and deny that they acted with malice or deliberate indifference to Mr. Earvin's rights. Defendants lack sufficient knowledge or information to form a belief about whether any other Defendants intentionally failed to act, with malice or deliberate indifference to Mr. Earvin's rights.

65.    Due to the Defendants' unconstitutional failure to intervene, Mr. Earvin sustained damages including pain, suffering, emotional distress, injury, and death.

ANSWER: Defendants Volk, Waterstraat, Conley, Crary, Fishel, and Lindsey deny that they unconstitutionally failed to intervene and deny causing damage to Mr. Earvin.

Defendant Hendricks admits he did not intervene but denies this was unconstitutional. Defendant Hendricks denies Mr. Earvin sustained pain, suffering, and injury because he did not intervene. Defendant Hendricks lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph.

Defendants Volk, Waterstraat, Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about whether any other Defendants unconstitutionally failed to intervene, or whether any alleged failure to intervene caused damages to Mr. Earvin.

Defendant Lindsey admits that some officers failed to intervene, but lacks knowledge or

information sufficient to form a belief about which officers failed to intervene, or whether those officers are Defendant Officers. Defendant Lindsey lacks sufficient knowledge or information to form a belief about whether the failure to intervene was unconstitutional or whether Mr. Earvin sustained damages as a result of the failure to intervene.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to any relief as to them.

### COUNT III – 42 U.S.C. §1983 – Failure to Protect
### (Eighth Amendment Claim Against Watson and Snyder)

66.    All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

67.    Mr. Earvin's injuries were proximately caused by the policies and practices of Defendants Watson and Snyder.

ANSWER: Defendants deny the allegations contained in this paragraph.

68.    At all relevant times, the Defendants had an affirmative duty to take reasonable steps to ensure Mr. Earvin's well-being and safety given that Mr. Earvin was in government custody.

ANSWER: Defendants deny the allegations contained in this paragraph.

69.    Defendants knew that Mr. Earvin and other inmates faced a substantial risk of serious harm from officers in their employ, including the Defendant officers involved in brutally beating Mr. Earvin to death, and failed to take reasonable measures to abate said risk.

ANSWER: Defendants deny the allegations contained in this paragraph.

70.    On information and belief, prior to May 2018, Defendants Watson and Snyder knew that correctional staff at Western Illinois, including without limitation Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges were routinely using excessive force against prisoners housed there. This routine use of excessive force was widespread and pervasive. Despite knowledge of this unconstitutional use of force, Defendants Watson and Snyder failed to adequately supervise, discipline, or train correctional staff, or take any other reasonable measures to prevent officers like Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges from using excessive force against Mr. Earvin.

ANSWER: Defendants deny the allegations contained in this paragraph.

71.    At all times relevant to their involvement in this case, Defendants Watson and Snyder were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding use of force at Western Illinois; the training of correctional staff at Western Illinois on use of force; and the supervision and discipline of correctional staff at Western Illinois.

ANSWER: Defendants deny the allegations in this paragraph to the extent it asserts that Watson and Snyder were the only individuals responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding use of force at Western Illinois; the training of correctional staff at Western Illinois on use of force; or the supervision and discipline of correctional staff at Western Illinois. Defendants admit that Watson and Snyder, among others, are responsible for the creation, implementation, oversight, and

supervision of policies, practices, and procedures regarding use of force at Western Illinois; the training of correctional staff at Western Illinois on use of force; or the supervision and discipline of correctional staff at Western Illinois.

72.     The widespread use of excessive force at Western Illinois as described above, so pervasive as to constitute a *de facto* policy or practice, was able to exist and flourish because Defendants Watson and Snyder were deliberately indifferent to the problem, thereby ratifying it.

ANSWER: Defendants deny the allegations contained in this paragraph.

73.     Mr. Earvin's injuries were caused by employees of IDOC, including without limitation Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges, who acted pursuant to the *de facto* policies described above at Western Illinois, which were ratified by Watson and Snyder.

ANSWER: Defendants deny that they caused Mr. Earvin's injuries. Defendants deny that any injuries were caused by employees acting pursuant to any alleged *de facto* policies as described above at Western Illinois, and deny that any alleged *de facto* policies were ratified by Watson and Snyder.

Defendants Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about the remaining allegations in this paragraph.

Defendants Hendricks, Lindsey and Volk admit that Defendant Banta caused injury to Mr. Earvin, but lack sufficient knowledge or information to form a belief about whether Defendant Banta caused all of Mr. Earvin's injuries. Defendants Hendricks, Lindsey, and Volk lack sufficient knowledge or information to form a belief about whether defendant officers other than Banta caused injuries to Mr. Earvin.

Defendant Waterstraat admits that Defendant Hedden caused injury to Mr. Earvin, but lacks sufficient knowledge or information to form a belief about whether Defendant Hedden caused all of Mr. Earvin's injuries. Defendant Waterstraat lacks sufficient knowledge or information to form a belief about whether defendant officers other than Hedden caused injuries to Mr. Earvin.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to any relief as to them.

**COUNT IV – 42 U.S.C. §1983 –Deliberate Indifference to Serious Medical Need**
**(Eighth Amendment claim against Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk, Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells, McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, Huges, Lindsey, Duesenberg, Smith, Hill, Conley, Session, Durell, Watson, Eichelberger, and Hubbard)**

74.    All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

75.    At all relevant times, Mr. Earvin was an inmate in the custody of the IDOC and was subject to the Defendants' care and medical services.

ANSWER: Defendants admit that Mr. Earvin was an inmate in the custody of IDOC, but deny that all of the identified defendants were responsible for providing medical services.

76.    Mr. Earvin had a clearly established right under the United States Constitution to be free from deliberate indifference to his known serious medical needs and to receive proper and adequate medical care while incarcerated and under the custody and control of the Defendants.

ANSWER: Defendants deny there is a constitutional right to receive proper and adequate medical care while incarcerated and under the custody and control of the Defendants. Defendants admit that there is a clearly established right under the United States Constitution to be free from deliberate indifference to known serious medical needs, but deny that this is a full and complete statement of the law.

77.     Each Defendant knew or should have known of this clearly established right at the time of the incident that led to Mr. Earvin's death.

ANSWER: Defendants admit that, as of May 17, 2018, they knew that there is a clearly established right under the United States Constitution to be free from deliberate indifference to known serious medical needs. Defendants deny the remaining allegations in this paragraph.

78.     Subsequent to the beating inflicted on him by correctional staff, Mr. Earvin was suffering from an objectively serious medical condition in that he had several fractured ribs and various severe neurological and internal injuries, in addition to various bruises, abrasions, and lacerations. His condition was grave.

ANSWER: Defendants admit that Mr. Earvin had several fractured ribs and internal injuries, but deny this paragraph to the extent it alleges that Defendants were aware of these internal injuries. Defendants lack sufficient knowledge or information to form a belief about the remaining allegations contained in this paragraph.

79.     By virtue of either participating in or being present for the beating of Mr. Earvin,
Defendants Hedden, Burnett, Haubrich, Banta, Sheffler, Syrcle, Snell, Hendricks, Hasten, Volk,
Werries, Kurfman, Shaw, Richmiller, Waterstraat, Arens, Fishel, Crary, Shoopman, Sorrells,
McQuillen, Lenning, Thomas, Looker, Pool, Grawe, Chenoweth, Radecki, and Huges were aware
that he had suffered serious injuries and had an objectively serious medical need, yet failed to
secure the necessary emergency lifesaving medical treatment he required and/or obstructed or
interfered with his access to the requisite medical care.

ANSWER: Defendants deny the allegations contained in this paragraph.

80.     Defendants Lindsey, Duesenberg, Smith, Hill, Conley, Session, Durell, Watson,
Eichelberger, Hubbard, Shipman, and Wohlfiel all had contact with Mr. Earvin subsequent to the
beating, observed signs of his deteriorating and critical condition and his serious medical need, yet
failed to secure the necessary emergency lifesaving medical treatment he required in a timely
manner and/or obstructed or interfered with his access to the requisite medical care.

ANSWER: Defendants Hendricks, Volk, Waterstraat, Crary, and Lenning lack sufficient
knowledge or information to form a belief about the allegations contained in this paragraph.

Defendant Conley denies the allegations in this paragraph.

Defendant Lindsey admits that he had contact with Mr. Earvin subsequent to the beating.
Defendant Lindsey denies the remaining allegations in this paragraph.

Defendant Fishel admits that he had contact with Mr. Earvin subsequent to when Mr.
Earvin was brought to segregation, but lacks knowledge or information sufficient to form a belief
about whether this was after "the beating." Defendant Fishel denies the remaining allegations in
this paragraph.

81.    At all times relevant to the allegations in this Complaint, each Defendant knew of and disregarded the excessive risks associated with Mr. Earvin's serious and life-threatening medical condition.

ANSWER: Defendants deny the allegations contained in this paragraph.

82.    With deliberate indifference to Mr. Earvin's constitutional right to adequate medical care, the Defendants knowingly failed to adequately examine, treat, and/or care for Mr. Earvin's worsening condition. They did so despite their knowledge of Mr. Earvin's serious medical needs, thereby placing him at risk of serious physical harm, including death. Therefore, the Defendants knew or were aware that Mr. Earvin faced a substantial risk of harm and disregarded this risk by failing to take adequate measures to reduce the risk.

ANSWER: Defendants deny the allegations contained in this paragraph.

83.    The acts or omissions of each Defendant were the legal and proximate cause of Mr. Earvin's death.

ANSWER: Defendants deny the allegations contained in this paragraph.

84.    The acts and omissions of each Defendant caused Mr. Earvin damages in that he suffered extreme physical and mental pain while in the Defendants' custody.

ANSWER: Defendants deny the allegations contained in this paragraph.

85.    The intentional actions or inactions of each Defendant as described herein constituted the unnecessary and wanton infliction of pain upon Mr. Earvin, thereby violating the Eighth Amendment.

ANSWER: Defendants deny the allegations contained in this paragraph.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to any relief as to them.

## COUNT V – 42 U.S.C. §1983 – Conspiracy
## (All Defendants)

86.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

87.     Defendants reached an agreement among themselves to deprive Mr. Earvin of his constitutional rights and to protect each other from liability for depriving Mr. Earvin of his rights, as described above.

ANSWER: Defendants deny the allegations contained in this paragraph.

88.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

ANSWER: Defendants deny the allegations contained in this paragraph.

89.     The misconduct described herein was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Earvin's rights.

ANSWER: Defendants deny the allegations contained in this paragraph.

90.     As a direct and proximate result of the illicit prior agreement as set forth above, Mr. Earvin's rights were violated and he sustained damages including pain, suffering, emotional distress, injury, and death.

ANSWER: Defendants deny the allegations contained in this paragraph.

91. Mr. Earvin's injuries were caused by employees of IDOC who acted pursuant to the *de facto* policies described above at Western Illinois, which were ratified by Watson and Snyder.

ANSWER: Defendants Hendricks, Volk and Lindsey admit that Banta is an employee of IDOC and injured Mr. Earvin but lack sufficient knowledge or information to form a belief about whether all of Mr. Earvin's injuries were caused by employees of IDOC.

Defendant Waterstraat admits that Hedden is an employee of IDOC and injured Mr. Earvin but lacks sufficient knowledge or information to form a belief about whether all of Mr. Earvin's injuries were caused by employees of IDOC.

Defendants Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about the cause of Mr. Earvin's injuries.

Defendants deny the remaining allegations contained in this paragraph.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to any relief as to them.

### COUNT VI – State Law Claim – Intentional Infliction of Emotional Distress
### (Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, and Banta)

92. All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

93. As set forth above, by beating Mr. Earvin to death without legal justification, the Defendant Officers abused their power and engaged in extreme and outrageous conduct.

ANSWER: Defendants deny they beat Mr. Earvin to death and deny abusing their power or engaging in extreme and outrageous conduct.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

Defendants Hendricks, Volk and Lindsey deny that all of the allegations "as set forth above" are a true and accurate statement of the beating of Mr. Earvin. Defendants Hendricks, Volk and Lindsey admit that Defendant Banta, by beating Mr. Earvin, abused his power and engaged in extreme and outrageous conduct. Defendants Hendricks, Volk and Lindsey lack knowledge or information sufficient to form a belief about whether Defendant Banta beat Mr. Earvin "to death."

Defendant Waterstraat lacks knowledge or information sufficient to form a belief about whether "as set forth above" Mr. Earvin was beaten to death without legal justification, or whether Defendant Officers "as set forth above" abused their power and engaged in extreme and outrageous conduct.

94.    The Defendants Officers' actions as set forth above were done intentionally or with the knowledge that there was a strong likelihood that the conduct would inflict severe emotional distress and with reckless disregard of that likelihood.

ANSWER: Defendants deny that they engaged in the actions alleged in this paragraph, and deny that they acted intentionally or with the knowledge that there was a strong likelihood that their conduct would inflict severe emotional distress or with reckless disregard of that likelihood.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

Defendants Hendricks, Lindsey and Volk deny that the actions "set forth above" are a complete and accurate statement of what occurred. Defendants Hendricks, Lindsey and Volk admit that Defendant Banta's actions were done intentionally. Defendants Hendricks, Lindsey and Volk lack sufficient knowledge or information to form a belief about whether Banta acted with the knowledge that there was a strong likelihood that the conduct would inflict severe emotional distress and with reckless disregard of that likelihood. Defendants Hendricks, Lindsey and Volk lack sufficient knowledge or information to form a belief about whether other Defendant officers named in this Count acted in the manner alleged in this paragraph.

Defendant Waterstraat lacks knowledge or information sufficient to form a belief about whether the actions "as set forth above" were done intentionally or with the knowledge that there was a strong likelihood that the conduct would inflict severe emotional distress and with reckless disregard of that likelihood.

95.    The Defendants Officers' actions as set forth above were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Earvin's rights.

ANSWER: Defendants deny that they acted in the manner alleged in this paragraph, and deny that their actions were undertaken intentionally, with malice, or with reckless indifference to Mr. Earvin's rights.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

Defendants Hendricks, Lindsey and Volk deny that the actions "set forth above" are a complete and accurate statement of what occurred. Defendants Hendricks, Lindsey and Volk admit Defendant Banta's actions were undertaken intentionally, but lack sufficient knowledge or information to form a belief about whether Defendant Banta acted with malice or with reckless

indifference to Mr. Earvin's rights. Defendants Hendricks, Lindsey and Volk lack sufficient knowledge or information to form a belief about whether other Defendant officers named in this Count acted in the manner alleged in this paragraph.

Defendant Waterstraat lacks knowledge or information sufficient to form a belief about whether the actions "as set forth above" were done intentionally, with malice, and/or with reckless indifference to Mr. Earvin's rights.

96.     As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including severe emotional distress and great conscious pain and suffering before his death.

ANSWER: Defendants deny engaging in misconduct and deny that Mr. Earvin sustained any damages as a direct and proximate result of their conduct. Defendants lack sufficient knowledge or information to form a belief about whether Mr. Earvin sustained damages as a result of any misconduct of other Defendant officers named in this Count.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to any relief as to them.

### COUNT VII – State Law Claim – Battery
**(Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, and Banta)**

97.     All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

98.     As set forth above, the Defendant Officers intentionally made physical contact with Mr. Earvin without just cause. This physical contact was offensive and harmful.

ANSWER: Defendants deny that they intentionally made physical contact with Mr. Earvin without just cause, and deny that any contact by them was offensive or harmful.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about whether other Defendant officers engaged in the conduct alleged in this paragraph.

Defendants Hendricks, Lindsey and Volk deny that all of the allegations "as set forth above" are a true and accurate statement of what occurred. Defendants Hendricks, Lindsey and Volk admit that Defendant Banta intentionally made contact with Mr. Earvin and that the physical contact was harmful and offensive but lack knowledge or information about whether the contact was without just cause.

Defendant Waterstraat lacks knowledge or information sufficient to form a belief about whether "as set forth above" Defendant Officers intentionally made contact with Mr. Earvin without just cause, or whether the contact was offensive and harmful.

99.    The actions of the Defendant officers were intentional, willful, and wanton.

ANSWER: Defendants deny that their actions were intentional, willful, or wanton.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about whether other Defendant Officers' actions were intentional, willful, or wanton.

Defendants Hendricks, Volk and Lindsey admit that Defendant Banta's actions were intentional, willful, and wanton.

Defendant Waterstraat admits that Defendant Hedden's actions were intentional, willful, and wanton.

Defendants Hendricks, Volk, Lindsey, and Waterstraat lack knowledge or information sufficient to form a belief about whether other Defendant Officers' actions were intentional, willful, or wanton.

100.    The misconduct set forth herein was undertaken with intentional disregard of Mr. Earvin's rights.

ANSWER: Defendants deny that they engaged in misconduct and deny they acted with intentional disregard of Mr. Earvin's rights.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about whether Defendant Officers engaged in misconduct with intentional disregard of Mr. Earvin's rights.

Defendants Hendricks, Volk and Lindsey deny that all of the allegations "as set forth above" are a true and accurate statement of what occurred. Defendants Hendricks, Volk and Lindsey admit that the misconduct by Alex Banta was undertaken with intentional disregard of Mr. Earvin's rights. Defendants Hendricks, Volk and Lindsey lack knowledge or information sufficient to form a belief about whether other Defendant officers engaged in misconduct with intentional disregard of Mr. Earvin's rights.

Defendant Waterstraat lacks knowledge or information sufficient to form a belief about whether "as set forth herein" Defendant officers engaged in misconduct with intentional disregard for Mr. Earvin's rights.

101.    As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including great conscious pain and suffering before his death.

ANSWER: Defendants deny that they engaged in misconduct. Defendants lack sufficient knowledge or information to form a belief about the allegations in this paragraph.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to relief as to them.

## COUNT VIII – State Law Claim – Negligent or Willful and Wanton Conduct

### (Pursuant to the Illinois Survival Act Against Defendants Hedden, Burnett, Haubrich, Banta, Watson, and Snyder)

102. All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

103. As set forth above, the actions of the Defendants breached their duty of care to the prisoners in their custody by using excessive force against Mr. Earvin and/or failing to intervene to prevent the use of excessive force against him.

ANSWER: Defendants deny that their actions, or the actions of Watson and Snyder, breached their duty of care to the prisoners in their custody by using excessive force against Mr. Earvin or failing to intervene to prevent the use of force against him.

Defendants lack sufficient knowledge or information to form a belief about whether the other Defendant officers sued in this Count engaged in the conduct alleged.

104.    In the alternative, the actions of the Defendants were willful and wanton in that they demonstrated complete indifference to the safety of others. Defendants were aware that an injury would likely result from their acts or failures to act and recklessly disregarded the consequences of those acts or failures to act.

ANSWER: Defendants deny the allegations contained in this paragraph in regards to themselves, Watson, and Snyder.

Defendants Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about whether the other Defendant officers sued in this Count engaged in the conduct alleged.

Defendant Waterstraat admits that Defendant Hedden's actions were willful and wanton in that he demonstrated a complete indifference to the safety of Earvin and was aware that an injury would likely result from his acts and recklessly disregarded the consequences of those acts. Defendant Waterstraat lacks knowledge or information sufficient to form a belief about whether other Defendants acted or failed to act in the manner alleged.

Defendants Hendricks, Volk and Lindsey admit that Defendant Banta's actions were willful and wanton in that he demonstrated a complete indifference to the safety of Earvin and was aware that an injury would likely result from his acts and recklessly disregarded the consequences of those acts. Defendants Hendricks, Volk and Lindsey lack knowledge or information sufficient to form a belief about whether other Defendants acted or failed to act in the manner alleged.

105.    The misconduct set forth herein was undertaken with intentional disregard of Mr. Earvin's rights.

ANSWER: Defendants deny the allegations contained in this paragraph in regards to themselves, Watson, and Snyder.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about whether other Defendant officers engaged in misconduct with intentional disregard of Mr. Earvin's rights.

Defendant Waterstraat lacks knowledge or information sufficient to form a belief about whether the misconduct "set forth herein" by other Defendant officers was undertaken with intentional disregard of Mr. Earvin's rights.

Defendants Hendricks, Volk and Lindsey deny that the misconduct "set forth herein" completely or accurately describes what occurred. Defendants Hendricks, Volk and Lindsey admit that Defendant Banta engaged in misconduct with intentional disregard of Mr. Earvin's rights. Defendants Hendricks, Lindsey and Volk lack knowledge or information sufficient to form a belief about whether other Defendant officers engaged in misconduct with intentional disregard for Mr. Earvin's rights.

106.    As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including great conscious pain and suffering before his death.

ANSWER: Defendants deny the allegations contained in this paragraph in regards to themselves, Watson, and Snyder.

Defendants Conley, Crary, Fishel, and Lenning lack sufficient knowledge or information to form a belief about whether the other Defendant officers engaged in the conduct alleged.

Defendant Waterstraat admits that as a result of Hedden's misconduct, Mr. Earvin sustained pain and suffering before his death.

Defendants Hendricks, Volk and Lindsey admit that as a result of Banta's misconduct, Mr. Earvin sustained pain and suffering before his death.

Defendants Hendricks, Lindsey, Volk, and Waterstraat lack knowledge or information

sufficient to form a belief about the remaining allegation in this paragraph.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to any relief as to them.

### COUNT IX – State Law Wrongful Death Claim - Battery
### (Against Defendants Hedden, Burnett, Haubrich, and Banta)

107.    All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

108.    As set forth above, the Defendant Officers intentionally made physical contact with Mr. Earvin without just cause. This physical contact was offensive and harmful.

ANSWER: Defendants deny that they intentionally made physical contact with Mr. Earvin without just cause and deny any offensive or harmful physical contact.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about whether other Defendant officers engaged in the conduct alleged in this paragraph.

Defendants Hendricks, Lindsey and Volk deny that all of the allegations "as set forth above" are a true and accurate statement of what occurred. Defendants Hendricks, Lindsey and Volk admit that Defendant Banta intentionally made contact with Mr. Earvin and that the physical contact was harmful and offensive but lack knowledge information as to whether the contact was made without just cause.

Defendant Waterstraat lacks knowledge or information sufficient to form a belief about whether "as set forth above" Defendant Officers intentionally made contact with Mr. Earvin without just cause, or whether the contact was offensive and harmful.

109.     The actions of the Defendant Officers were intentional, willful, and wanton.

ANSWER: Defendants deny that their actions were intentional, willful, or wanton.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about whether other Defendant Officers' actions were intentional, willful, or wanton.

Defendants Hendricks, Volk and Lindsey admit that Defendant Banta's actions were intentional, willful, and wanton.

Defendant Waterstraat admits that Defendant Hedden's actions were intentional, willful, and wanton.

Defendants Hendricks, Volk, Lindsey, and Waterstraat lack knowledge or information sufficient to form a belief about whether other Defendant Officers' actions were intentional, willful, or wanton.

110.     The misconduct set forth herein was undertaken with intentional disregard of Mr. Earvin's rights.

ANSWER: Defendants deny that they engaged in misconduct and deny they acted with intentional disregard of Mr. Earvin's rights.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about whether other Defendant Officers engaged in misconduct with intentional disregard of Mr. Earvin's rights.

Defendants Hendricks, Volk and Lindsey deny that all of the allegations "as set forth

above" are a true and accurate statement of what occurred. Defendants Hendricks, Volk and

Lindsey admit that the misconduct by Alex Banta was undertaken with intentional disregard of

Mr. Earvin's rights. Defendants Hendricks, Volk and Lindsey lack knowledge or information

sufficient to form a belief about whether other Defendant officers engaged in misconduct with

intentional disregard of Mr. Earvin's rights.

Defendant Waterstraat lacks knowledge or information sufficient to form a belief about

whether "as set forth herein" Defendant officers engaged in misconduct with intentional

disregard for Mr. Earvin's rights.

111.   As a direct and proximate result of the Defendant Officers' misconduct, Mr.
Earvin sustained damages including death.

ANSWER: Defendants deny engaging in misconduct and deny that Mr. Earvin sustained

damages or died as a direct or proximate result of their actions. Defendants lack sufficient

knowledge or information to form a belief about whether Mr. Earvin sustained damages

including death as a direct and proximate result of misconduct by the Defendant officers sued in

this Count.

112.   Plaintiff Larry Pippion claims damages for the wrongful death of Mr. Earvin,
and for his loss of his services, protection, care, future income, assistance, society, companionship,
comfort, guidance, counsel, and advice, as well as for his mental anguish caused by this loss, and
for burial and other expenses and damages pursuant to the Illinois Wrongful Death Act.

ANSWER: Defendants admit that Plaintiff is claiming the damages contained in this

paragraph but deny Plaintiff is entitled to any relief against them.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to any relief as to them.

### COUNT X – State Law Wrongful Death Claim - Negligent or Willful and Wanton Conduct (Against Defendants Hedden, Burnett, Haubrich, and Banta)

113. All of the prior paragraphs are incorporated by reference as though fully set forth herein.

ANSWER: Defendants incorporate their responses to all prior paragraphs.

114. As set forth above, the actions of the Defendants breached their duty of care to the prisoners in their custody by using excessive force against Mr. Earvin and/or failing to intervene to prevent the use of excessive force against him.

ANSWER: Defendants deny that their actions breached their duty of care to the prisoners in their custody by using excessive force against Mr. Earvin and/or failing to intervene to prevent the use of excessive force against him.

Defendants lack knowledge or information sufficient to form a belief about whether other Defendant officers breached their duty of care by using excessive force against Mr. Earvin or failing to intervene to prevent the use of excessive force against him.

115. In the alternative, the actions of the Defendants were willful and wanton in that they demonstrated complete indifference to the safety of others. Defendants were aware that an injury would likely result from their acts or failures to act and recklessly disregarded the consequences of those acts or failures to act.

ANSWER: Defendants deny that their actions were willful, or wanton, deny that they demonstrated a complete indifference to the safety of others, and deny that they were aware that an injury would likely result from their acts or failures to act or that they recklessly disregarded the consequences of those acts or failures to act.

Defendants Conley, Crary, Fishel, and Lenning lack knowledge or information sufficient to form a belief about whether other Defendant Officers' actions were as described in this paragraph.

Defendants Hendricks, Volk and Lindsey admit that Defendant Banta's actions were willful and wanton, demonstrated a complete indifference to the safety of others, and that Banta was aware that an injury would likely result from his actions.

Defendant Waterstraat admits that Defendant Hedden's actions were willful and wanton, demonstrated a complete indifference to the safety of others, and that Hedden was aware that an injury would likely result from his actions.

Defendants Hendricks, Volk, Lindsey, and Waterstraat lack knowledge or information sufficient to form a belief about whether other Defendant Officers' actions were as described in this paragraph.

116.    As a direct and proximate result of the Defendant Officers' misconduct, Mr. Earvin sustained damages including death.

ANSWER: Defendants deny engaging in misconduct and deny that Mr. Earvin sustained any damages as a direct and proximate result of their conduct. Defendants lack sufficient knowledge or information to form a belief about whether Mr. Earvin sustained damages as a result of any misconduct of other Defendant officers named in this Count.

117.     Plaintiff Larry Pippion claims damages for the wrongful death of Mr. Earvin, and for his loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as for his mental anguish caused by this loss, and for burial and other expenses and damages pursuant to the Illinois Wrongful Death Act.

ANSWER: Defendants admit the Plaintiff is claiming the damages contained in this paragraph but deny Plaintiff is entitled to any relief against them.

WHEREFORE, Plaintiff, Larry Pippion as the Representative of the Estate of Larry Earvin, demands judgment in favor of Plaintiff and against Defendants awarding compensatory damages, punitive damages, attorney's fees and costs, and for such other and further relief as the Court may deem just and appropriate.

ANSWER: Defendants deny that Plaintiff is entitled to any relief as to them.

## Count XI – Indemnification

**RESPONSE:** Count XI was dismissed by the Court.

### JURY DEMAND

Plaintiff, Larry Pippion, as the Representative of the Estate of Larry Earvin, hereby demands a jury trial on all issues allowed by law.

ANSWER: Defendants also demand a trial by jury.

## JURY DEMAND

Defendants demand a trial by jury in this matter.

## AFFIRMATIVE DEFENSES

### A. Sovereign Immunity

To the extent Plaintiff's claims for monetary damages are against defendants in their

official capacities, those claims are precluded by the Eleventh Amendment, which bars an action for damages in federal court against a State or a State official sued in his official capacity. Plaintiff's claims under state law are barred by sovereign immunity and the State Lawsuit Immunity Act.

### B. Qualified Immunity

At all times relevant herein, defendants acted in good faith in the performance of their official duties and without violating Mr. Earvin's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are, therefore, protected from suit by the doctrine of qualified immunity.

WHEREFORE, for the above and foregoing reasons, defendants respectfully request this Honorable Court deny plaintiff any relief in this matter whatsoever and enter judgment in their favor.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>Brett Hendricks, Shawn Volk, Richard Waterstraat, Shawn Conley, Philip Crary, Robert Fishel, Daniel Lenning, and Matthew Lindsey,</td></tr>
<tr><td></td><td>Defendants,</td></tr>
<tr><td>Laura K. Bautista #6289023<br>Assistant Attorney General<br>500 South Second Street<br>Springfield, Illinois 62701<br>Telephone:    (217) 782-5819<br>Facsimile:    (217) 524-5091<br>E-mail:lbautista@atg.state.il.us</td><td>KWAME RAOUL, Attorney General, State of Illinois,</td></tr>
<tr><td></td><td>Attorney for Defendants,</td></tr>
<tr><td></td><td>By:    s/Laura K. Bautista<br>Laura K. Bautista<br>Assistant Attorney General</td></tr>
</table>

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| LARRY PIPPION, as Representative of the Estate of Larry Earvin, | ) ) ) |
| Plaintiff, | ) ) |
| -vs- | ) ) No. 19-3010-SEM |
| SGT. WILLIE HEDDEN, LT. BENJAMIN BURNETT, LT. BLAKE HAUBRICH, C/O ALEX BANTA, WARDEN CAMERON WATSON, ASST. WARDEN STEVE SNYDER, Individually, et al., | ) ) ) ) ) ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2020 I caused to be electronically filed the foregoing, **DEFENDANTS' HENDRICKS, VOLK, WATERSTRAAT, CONLEY, CRARY, FISHEL, LENNING, AND LINDSEY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Michael Oppenheimer
michael@eolawus.com

Ronak Maisuria
ronak@eolawus.com

Jon F. Erickson
jon@eolawus.com

Remy Taborga
Ataborga@atg.state.il.us

Richard Frazier
frazier@springfieldlawfirm.com

Theresa Powell
tpowell@heylroyster.com

Stanley N. Wasser
swasser@feldman-wasser.com

Respectfully submitted,


By: _s/ Laura K. Bautista_____
      Laura K. Bautista, #6289023